390 So.2d 584 (1980)
In re Richard Gerald JORDAN.
No. 50551.
Supreme Court of Mississippi.
November 19, 1980.
Earl L. Denham, Levi & Denham, Ocean Springs, Joseph P. Hudson, Lawyer & Hudson, Gulfport, for appellant.
*585 Bill Allain, Atty. Gen., by Karen A. Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
En Banc.

ON PETITION FOR WRIT OF ERROR CORAM NOBIS
BROOM, Justice, for the Court:
Murder while engaged in the offense of kidnapping is the offense for which the petitioner Richard Gerald Jordan was convicted and sentenced to death. Affirmance was ordered on his appeal. Jordan v. State, 365 So.2d 1198 (Miss. 1978). Subsequently the United States Supreme Court denied Jordan's petition for writ of certiorari. Jordan v. Mississippi, 444 U.S. 885, 100 S.Ct. 175, 62 L.Ed.2d 114 (1979). Jordan then sought habeas corpus relief in the United States District Court for the Southern District of Mississippi. That court dismissed his petition without prejudice because he had failed to present all his claims to this Court.
Jordan argues that the trial court's refusal to instruct the jury that it could find him guilty of a lesser offense violated the Fifth, Eighth, or Fourteenth Amendments to the United States Constitution. Previously in Jackson v. State, 337 So.2d 1242, 1255 (Miss. 1976), we held that instructions on the lesser included offense
[S]hould only be given after the trial court has carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence.
Beck v. Alabama, ___ U.S. ___, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). Careful review of the evidence in this case clearly reveals to us that any jury instruction concerning a lesser included offense was neither warranted upon the whole record nor justified by the evidence. No rational basis appears upon which the jury could have acquitted Jordan of the crime of murder while engaged in the crime of kidnapping or found him guilty of any lesser offense. He contends that the jury should have been instructed as to "both murder and kidnapping, in addition to capital murder." It is to be noted that the jury was clearly instructed that it (the jury) had the option of fixing Jordan's punishment at life imprisonment or death, the only two penalties for any murder in this jurisdiction. Quite differently, in Beck, supra, as the opinion of Mr. Justice Stevens states, the jury, under the Alabama statute, was given "the choice of either convicting the defendant of the capital crime, in which case it is required to impose the death penalty, or acquitting him...." Although the indictment charged murder "while engaged in the commission" of kidnapping, the indictment did not charge kidnapping and did not set forth any of the elements of such offense. Accordingly, a verdict of guilty of kidnapping would have been totally improper, and the argument under discussion lacks merit.
Also without merit is Jordan's argument that in the lower court there was "the lack of notice" to him of what aggravating circumstances could be used against him and that the jury was improperly instructed on aggravating circumstances. Pertinent here is Jackson, supra, at 1256, which sets forth guidelines for bifurcated trials in matters of this type; so that the first phase of the trial would be as to guilt, and the second phase would be as to his punishment. We stated in Jackson:
At the sentencing hearing, the question to be decided by the jury is whether the defendant shall be sentenced to death or to life imprisonment. At this hearing, the State may elect to stand on the case made at the first hearing, if before the same jury, or may reintroduce any part of the evidence adduced at the first hearing which it considers to be relevant to the particular question of whether the defendant shall suffer death or be sentenced to life imprisonment. In addition thereto, an accused's prior record of criminal convictions, if any, may be proven as an additional aggravating circumstance whether the defendant testifies in his own behalf or not. At this hearing, the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances *586 surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison.
Proof beyond a reasonable doubt of the statutory elements of the capital offense with which the accused is charged shall constitute sufficient circumstance to authorize imposition of the penalty of death unless the mitigating circumstances shown by the evidence outweigh the aggravating circumstances.
The jury shall not be required to make a special finding of any mitigating circumstance in order to return a verdict that the accused should be sentenced to life in prison. However, before the jury may return a verdict that the defendant should suffer the penalty of death, they must unanimously find in writing that after weighing the mitigating circumstances and the aggravating circumstances one against the other that the mitigating circumstances do not outweigh the aggravating circumstances and that the defendant should suffer the penalty of death.
If the jury is unable to agree unanimously on a verdict at the sentencing hearing, the defendant shall be sentenced to life in prison.
We also hold that all convictions of persons where the penalty of death is imposed will be reviewed by this Court as preference cases in such a manner as to see that the death penalty was warranted under the facts of the case and that death sentences will not be wantonly or freakishly imposed but will only be inflicted in a consistent and evenhanded manner under like or similar circumstances.
Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) is not applicable here upon the facts. In Godfrey, the U.S. Supreme Court noted that the offenses committed by Godfrey "cannot be said to have reflected a consciousness materially more `depraved' than that of any person guilty of murder. His victims were killed instantaneously. They were members of his family who were causing him extreme emotional trauma." (446 U.S. 420, 433, 100 S.Ct. 1759, 1767, 64 L.Ed.2d 398, 409). In the case before us, Jordan's victim was not instantly killed. He brought her from her home after deceitfully pretending that he represented a utility company; then he took her at gunpoint out into the woods and shot her. Afterwards Jordan played the ransom game with Mr. Marter, his victim's husband, for many hours (agonizing to Mr. Marter) with Jordan assuring Marter that Mrs. Marter was safe and well.
Subsequent to Jackson, supra in Washington v. State, 361 So.2d 61, 68 (Miss. 1978), we stated:
It is crystal clear from our holding in Jackson that this Court is committed to the "individualized consideration of mitigating factors" in each case, and that the only limitation placed on the introduction of evidence of mitigating circumstances is that it must be reasonably relevant.
In accordance with Jackson, supra, Washington, supra, and other cases decided by us, in every instance where the death penalty is ordered, we carefully review such cases which serves "as a check against the random or arbitrary imposition of the death penalty." Gregg v. Georgia, 428 U.S. 153, 206, 96 S.Ct. 2909, 2940, 49 L.Ed.2d 859 (1976). Our review of the entire proceedings, that is trial of the guilt phase and sentencing phase, insures that the death penalty will be inflicted only in a consistent and even-handed manner. The present record before us clearly establishes the reason the death penalty was inflicted: Jordan's deception together with the cruel and calloused manner in which he killed his victim after kidnapping her and then over a period of many hours agonizing her husband about ransom money during which time he kept falsely assuring her husband that she was still alive and well. Gardner v. Florida, 430 U.S. 349, 361, 97 S.Ct. 1197, 1206, 51 L.Ed.2d 393 (1977). Upon these facts it cannot be said that reversible error resulted from either the lack of notice to Jordan of what aggravating circumstances the state would *587 rely on or the trial court's failure to instruct the jury as to the definition of aggravating and mitigating circumstances.
Another argument asserted is that Jordan was denied his Fourteenth Amendment rights because the trial court sentenced him without a pre-sentence report. He contends that the judge should not have sentenced him without obtaining a report from a probation officer pursuant to Mississippi Code Annotated § 47-7-9(3)(a), which provides as follows:
Separate division personnel (hereinafter presentence investigators) shall be provided to perform investigation for the court as provided in this subsection. Presentence investigators shall conduct presentence investigations on all persons convicted of a felony in any circuit court of the state, prior to sentencing and at the request of the circuit court judge of the court of conviction. The presentence evaluation report shall consist of a complete record of the offender's criminal history, educational level, employment history, psychological condition and such other information as the department or judge may deem necessary.
The matter of jury sentencing was discussed in great detail by the United States Supreme Court in Gregg v. Georgia, 428 U.S. 153 at 195, 96 S.Ct. 2909 at 2935, 49 L.Ed.2d 859. Excerpted from the court's opinion is the following pertinent language:
In summary, the concerns expressed in Furman that the penalty of death not be imposed in an arbitrary or capricious manner can be met by a carefully drafted statute that ensures that the sentencing authority is given adequate information and guidance. As a general proposition these concerns are best met by a system that provides for a bifurcated proceeding at which the sentencing authority is apprised of the information relevant to the imposition of sentence and provided with standards to guide its use of the information.
In the instant case Jordan was tried and sentenced under guidelines set forth in Jackson, supra, which allowed for presentation to the jury of a wide range of relevant mitigating factors. Jackson provides:
At this hearing, the defendant may prove his lack of a prior criminal record as a mitigating circumstance and may also adduce proof of any other circumstance or combination of circumstances surrounding his life and character or the commission of the offense with which he is charged that would be reasonably relevant to the question of whether he should suffer death or be sentenced to life in prison. (Emphasis added). (337 So.2d at 1256).
Under the Jackson rationale, the jury is not and was not precluded from consideration "of the fullest information possible concerning the defendant's life and characteristics." In accordance with Jackson the accused in any death penalty case is given a full opportunity to produce almost any information concerning his past life and background data including matters which ordinarily would not be revealed by a pre-sentence investigation made by a state probation officer.
Section 47-7-9, supra, provides for pre-sentence investigations in "felony" cases "at the request" of the judge. In the typical felony case (not involving the death penalty), there is not conducted a bifurcated trial where the jury decides the guilt issue at one phase and the punishment issue at another. It is obvious to us that the legislators, when enacting § 47-7-9, supra, providing for pre-sentence investigations, did not contemplate such an investigation in cases involving a death penalty where the jury decides the punishment to be meted out after a hearing on the punishment issue. We think the important issue is whether the sentence in a death penalty case will be arbitrarily or capriciously imposed. Such an imposition is precluded under our procedure where, as is the case here, the jury fixes the punishment after hearing proof on the issue of mitigating and aggravating circumstances, and then the case is given our full, careful and painstaking appellate review as we previously have done in this particular case. As found by us *588 when this case was here on appeal, infliction of the death penalty will neither be wanton nor freakish but will be consistent and even-handed when considered and measured against other death penalty cases previously affirmed by us.
Having carefully considered en banc Jordan's petition, the state's response, and Jordan's reply to the state's response, relief must be denied for the reasons stated above.
PETITION DENIED.