# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00127-SCT

*CURTIS WAYNE GAUSE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/2009 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | PONTOTOC COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART, REVERSED AND RENDERED IN PART - 06/23/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLSON, P.J., LAMAR AND CHANDLER, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1. Curtis Wayne Gause was indicted on Count I, the capital murder of Jeffrey Swords with the underlying felony of burglary, and on Count II, the attempted aggravated assault of Tracy Gause. On Count I, the jury was instructed on capital murder with the underlying felony of burglary with the intent to commit an assault therein, murder, manslaughter, and burglary. A Pontotoc County jury found Gause guilty of manslaughter and burglary, and not guilty of attempted aggravated assault. The Circuit Court of Pontotoc County sentenced

Gause to twenty years for manslaughter, and to twenty-five years for burglary, with fifteen years suspended and five years on post-release supervision, to run consecutively, all in the custody of the Mississippi Department of Corrections.

¶2. Gause appeals, raising three issues: (1) whether the trial court erred when it allowed the jury to consider a verdict on burglary; (2) whether the trial court erred by refusing to allow Gause to voir dire the State's expert, Dr. Steven Hayne; and (3) whether the trial court erred by dismissing venire persons based on prior jury service, rather than allowing them to excuse themselves if desired. We affirm Gause's conviction of manslaughter. We reverse and render Gause's conviction of burglary.

**FACTS**

¶3. Gause and Tracy Gause were married on December 10, 1983, and had two children, Brittany Catledge, who was twenty-one years old at the time of the trial, and Cora Beth Gause, who was fifteen. Numerous persons testified that the marriage was tumultuous, and that for years, Gause and Tracy had a pattern of repeatedly separating and getting back together. In March 2007, Tracy and Cora Beth moved to a trailer on Old Swords Lane in Ecru, Mississippi, to live with Tracy's paramour, Jeffrey Swords. Brittany lived in a trailer steps away from Tracy's with her husband, Samuel Catledge. Gause lived with various family members when he was not with Tracy, and occasionally visited Tracy and their children at her trailer. Gause did not have a key to the trailer.

¶4. In February 2008, Swords moved out of the trailer he had shared with Tracy. Tracy testified that, after Swords moved out, Gause spent the night at the trailer on two occasions, and that she had sex with Gause once, but she never had intended to get back together with

2

Gause. On March 21, 2008, Tracy told Gause she was planning to have a yard sale the next day. That afternoon, Tracy came to the home of Gause's sister, Amy Wages, where Gause was staying. Tracy talked to Gause and picked up items to sell at the yard sale. They talked about Gause coming to Tracy's trailer the next morning to help set up for the yard sale, although it was disputed whether that plan was made final. Wages's husband, Roy Wages, Jr., testified that Gause gave $40 to Tracy and that he heard Tracy and Gause tell each other "I love you" before Tracy left.

¶5. Tracy testified that she decided to go out with a friend at about 7:00 p.m. Tracy stated that when Gause called her at about 9:14 p.m., she told him she was not going to have the yard sale the next day because she was out that night. Tracy testified that she had not expected to see Gause the next morning, she had stayed up all night drinking, and she had met Swords at approximately 1:30 a.m. They went back to her trailer, where they talked to Cora Beth and her friend, Audrey Jamison, who was spending the night. At about 4:00 a.m., Tracy and Swords went to the restaurant where Tracy worked to open it for another employee. They left the restaurant at about 5:10 a.m. and returned to Tracy's trailer at about 5:15 a.m. After talking to the girls, Swords and Tracy retired to Tracy's bedroom, and the girls went to Cora Beth's bedroom.

¶6. Early that morning, Gause walked from his sister's house to Tracy's trailer, a distance of 3.2 miles. Gause testified that when he saw Swords's truck and Tracy's truck parked outside Tracy's trailer, he "saw red." He began smashing the trucks, which awakened Cora Beth, Audrey, Brittany, and Samuel. According to Gause, he saw a nightlight on inside Tracy's bedroom, peeked in the bedroom window through a space the curtain did not cover,

3

and witnessed Tracy performing a sexual act on Swords. Gause broke in the front door of Tracy's trailer, went to her bedroom, and opened the door. Gause, armed with a knife, stabbed Swords five times.[1] Tracy, Cora Beth, and Brittany all witnessed Gause stabbing Swords. According to the forensic pathologist, Dr. Steven Hayne, Swords died from a stab wound to the neck that severed his left carotid artery; the other stab wounds were nonlethal.

¶7.     While Gause attacked Swords, Tracy first tried to kick the knife out of his hand. Then, Swords told Tracy to go, and she ran to Brittany's trailer, where they called 911. Brittany had come outside, and she briefly witnessed Gause stabbing Swords. Then, Tracy ran back to her own trailer to be with Swords. Gause had run into the woods behind the trailer. Tracy testified that Gause returned and began beating her. She got away and ran outside. Gause came out and yelled to Tracy and Cora Beth "I told y'all I was going to get that son-of-a-bitch." Gause inflicted further damage on the trucks. Brittany testified that her father was behaving "like he had a demon in him." Tracy testified that she had believed Gause was going to kill her when he had come into the bedroom.

¶8.     When the police arrived, Gause walked up to a patrol car and was arrested. Two days later, after signing a waiver of his *Miranda* rights, he gave a typed statement, which he

---

[1] Some ambiguity surrounded the knife Gause used to stab Swords. Brittany identified a black-handled knife recovered from the woods in the trailer park as the one Gause had used to stab Swords. This knife was located in a different area from where witnesses had seen Gause go after the stabbing to throw the knife away. But Brittany stated she also had seen Gause with a silver-handled knife. Gause testified that he had used his pocket knife, which he always carried on his person, not the black-handled knife. Gause's confessions support his use of the pocket knife. Although the black-handled knife was tested by the crime laboratory, no forensic evidence linked it to Gause. Thus, evidence before the jury cast doubt on the State's theory that Gause had arrived at the trailer armed with the black-handled knife rather than with the pocket knife he habitually carried.

signed, and an audiotaped statement.[2] Both statements were admitted into evidence. In the typed statement, Gause stated that, when he saw Swords's truck at the trailer, he "saw red," stabbed the trucks' tires with his pocket knife, and broke the trucks' windows with a metal pole he found in the back of one of the trucks. Then, he kicked in the trailer door, saw Tracy and "started to kill her first" but then saw Swords and "went crazy on him." He threw the knife in the woods and waited for the police.

¶9. In the audiotaped statement, Gause stated that he had gone to Tracy's to help with a yard sale. He said that he had thought everything would be fine if Swords was not there. But when he saw Swords's truck, he "saw red." He stabbed the truck tires with his pocket knife, broke the truck window, and then broke into the trailer. When he saw Swords and Tracy in bed, he began stabbing Swords with the pocket knife. He stated that he did not kill Tracy because Cora Beth was there. He said that, after the stabbing, he threw the knife into the woods behind the trailer and waited on the police.

¶10. At the trial, Gause testified that, in February and March 2008, he and Tracy had talked about resuming their relationship. This was corroborated by Clay Warren, who testified that Tracy had told him she and Gause were trying to reconcile, and by Roy Wages, Jr. Gause testified that he had stayed at Tracy's trailer a dozen times during this period and that they had been intimate. Prior to that time, Tracy had dated Swords. Gause testified that Swords had threatened to kill him in the past and, on numerous occasions, had taunted Gause about the fact that Swords was sleeping with his wife. Cora Beth also testified that Gause and Swords had argued previously.

---

[2] *See **Miranda v. Arizona***, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

¶11.   Gause testified that he walked to Tracy's trailer on the morning of March 22, 2008, to help with the yard sale.  When he saw Swords's truck, he "saw red" and "snapped."  He smashed the truck windows, looked inside the trailer, saw Tracy performing a sexual act on Swords, and broke into the trailer and the bedroom inside.  Contrary to Gause's prior statements, he testified that he and Swords began fighting and he cut Swords accidentally during the fight.  He denied any intent to kill Swords or Tracy.  He also denied having beaten Tracy after the stabbing.

¶12.   On Count I, capital murder, the trial court instructed the jury on capital murder with the underlying felony of burglary with the intent to commit an assault therein, murder, manslaughter, and burglary.  On Count II, the court instructed the jury on the attempted aggravated assault of Tracy.  The jury found Gause guilty of manslaughter and burglary, and not guilty of attempted aggravated assault.

## LAW AND ANALYSIS

I.  WHETHER THE TRIAL COURT ERRED BY ALLOWING THE JURY
TO CONSIDER A VERDICT ON BURGLARY WHEN BURGLARY IS
NOT A LESSER-INCLUDED OFFENSE OF CAPITAL MURDER.

¶13.   Gause was indicted in a two-count indictment for the crimes of capital murder with the underlying felony of burglary and aggravated assault.  The trial court granted the State's jury instruction that if the jury did not find Gause guilty of capital murder, they were to consider the charge of murder; if they did not find murder, they were to consider manslaughter; and if they found him guilty of manslaughter, then they were to consider whether he was also guilty of burglary with the intent to commit an assault.  Gause objected to this instruction at the jury-instruction conference, arguing that burglary is not a lesser-

6

included offense of capital murder.  The State argued that burglary is a lesser-included offense of capital murder with the underlying felony of burglary.  After considering the arguments of both sides, the trial court granted the instruction.  Gause renews his arguments on appeal.

¶14.    Mississippi Code Section 99-19-5(1) provides for the instruction of the jury on lesser-included offenses:

> On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.

Miss. Code Ann. § 99-19-5(1) (Rev. 2007).  "[A] lesser-included offense 'is one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense.  An accused could not be guilty of the offense for which he is indicted without at the same time being guilty of the lesser-included offense.'"  *Thomas v. State*, 48 So. 3d 460, 472 (Miss. 2010) (quoting *Brazzle v. State*, 13 So. 3d 810, 815 (Miss. 2009)).  As explained in a specially concurring opinion by Chief Justice Armis Hawkins, "[a]n accused could not be guilty of the offense for which he is indicted without at the same time being guilty of the lesser included offense. The lesser included crime is encompassed within the crime for which the accused is indicted." *Shaw v. State*, 880 So. 2d 296, 301 (Miss. 2004) (quoting *Porter v. State*, 616 So. 2d 899, 910 (Miss. 1993) (Hawkins, C.J., specially concurring)).  "To constitute a lesser-included offense, every one of the essential ingredients must also constitute essential ingredients of

7

the more serious crime of which the accused is *indicted*." **Id.** In order to grant a lesser-included-offense instruction, there must be evidence supporting the lesser-included offense. *Sanders v. State*, 479 So. 2d 1097, 1108 (Miss. 1985). As discussed below, there is a crucial difference between a jury instruction on a lesser-included offense, which either the State or the accused may request, and an instruction on a lesser offense, which only the accused may request.

¶15. We begin by noting that it is undisputed that Gause was entitled to a heat-of-passion manslaughter instruction, based on the evidence. Miss. Code Ann. § 97-3-35 (Rev. 2006). By statute, manslaughter is a lesser-included offense of capital murder, and the jury may be instructed on manslaughter upon request of any party or upon the court's own motion, where the instruction is supported by the evidence, "consistent with the wording of the applicable manslaughter statute." Miss. Code Ann. § 99-19-5 (Rev. 2007); *see also* Miss. Code Ann. § 97-3-19(3) (Rev. 2006) ("[a]n indictment for murder or capital murder shall serve as notice to the defendant that the indictment may include any and all lesser included offenses thereof, including, but not limited to, manslaughter").

¶16. Gause argues that the jury should not have been given a pure burglary instruction, because he was not indicted for burglary, and burglary is not a lesser-included offense of the indicted crime of capital murder with the underlying felony of burglary. Gause contends that this Court has held that the underlying felony that supports a capital-murder charge is not a lesser-included offense of capital murder. In his argument, Gause posits that manslaughter in the course of a burglary would be capital murder because capital murder does not require intent to kill, but only that a killing have occurred during the commission of an enumerated

8

felony. Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2006). Therefore, he argues, the instruction that permitted the jury to find both manslaughter and burglary was erroneous. Gause argues that, because he was indicted for capital murder with the underlying felony of burglary, he could not be convicted of burglary alone. Gause contends that the burglary conviction was improper and must be dismissed. The State argues that the capital-murder indictment placed Gause on notice of the burglary charge.

¶17.    Gause correctly argues that this Court has held in several cases that "the underlying felony in a felony-murder case is not a lesser included offense." *Doss v. State*, 709 So. 2d 369, 378 (Miss. 1996) (underlying felony of robbery not a lesser-included offense to charged capital murder); *Ballenger v. State*, 667 So. 2d 1242, 1252-55 (Miss. 1995) (underlying robbery not lesser-included offense to charged capital murder); *Gray v. State*, 472 So. 2d 409, 417 (Miss. 1985) (overruled on other grounds) (underlying kidnapping not lesser-included offense to capital murder); *Cannaday v. State*, 455 So. 2d 713, 724-25 (Miss. 1984) (underlying kidnapping not lesser-included offense to capital murder); *In re Jordan*, 390 So. 2d 584, 585 (Miss. 1980) (underlying kidnapping not lesser-included offense to capital murder).

¶18.    In *In re Jordan*, the defendant was indicted for capital murder with the underlying felony of kidnapping. *In re Jordan*, 390 So. 2d at 585. The Court held that he was not entitled to a lesser-included-offense instruction on kidnapping because, while the indictment charged murder during the commission of a kidnapping, the indictment did not charge Jordan with kidnapping or set out the elements of the crime of kidnapping. *Id.* In *Doss*, the defendant, who was charged with capital murder with the underlying felony of robbery,

9

argued that he was entitled to a lesser-included offense instruction on robbery. ***Doss***, 709 So. 2d at 378. This Court rejected Doss's argument, because robbery is not a lesser-included offense or a component of capital murder or of murder. ***Id.*** The Court stated that

> . . . the most recent restatement of the law in this State, regarding whether or not the underlying felony in a felony-murder case is a lesser-included offense entitling the defendant to a separate instruction, clearly states that a defendant is not entitled to such an instruction as the language from previous cases used as the basis for such an argument has been held to be mere dicta.

***Id.***

¶19. The previously mentioned cases hold that the underlying felony is not a lesser-included offense of capital murder. The State argues that, because there was an evidentiary basis for a pure burglary instruction, the instruction was proper. This argument implicates the standard for granting a lesser-offense instruction, as opposed to a lesser-included-offense instruction. This Court has recognized the crucial distinctions between a lesser-included offense and a lesser offense. As previously stated, all the elements of a lesser-included offense are contained in the offense for which the defendant was indicted. ***Thomas***, 48 So. 3d at 472 (quoting ***Brazzle***, 13 So. 3d at 815). Because an indictment provides notice to the defendant of any lesser-included offenses, the State is entitled to a jury instruction on any lesser-included offenses for which there is an evidentiary basis.

¶20. In contrast, a lesser offense, also called a lesser-nonincluded offense or a lesser-related offense, arises from the same nucleus of operative fact as the charged offense, but its elements are not necessarily contained in the charged offense. "[T]he defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge

10

laid in the indictment." ***Phillipson v. State***, 943 So. 2d 670, 672 (Miss. 2006) (quoting

***Adams v. State***, 772 So. 2d 1010, 1016 (Miss. 2000)). Stated differently, "[i]f a lesser

offense, as opposed to a lesser-included offense, arises from the same operative facts and has

an evidentiary basis, we have held the defendant is entitled to an instruction for the lesser

charge the same as if it were a lesser-included charge." ***Moore v. State***, 799 So. 2d 89, 91

(Miss. 2001) (citing ***Griffin v. State***, 533 So. 2d 444, 447-48 (Miss. 1988)). "An accused is

entitled to a lesser-offense instruction only where there is an evidentiary basis in the record."

***Thomas v. State***, 48 So. 3d 460, 472 (Miss. 2010) (citing ***McGowan v. State***, 541 So. 2d

1027, 1028 (Miss. 1989)). Because the defendant's request of a lesser-offense instruction

operates as a waiver of the notice requirement, only the accused, and not the State, may

obtain a lesser-offense instruction. ***Griffin***, 533 So. 2d at 448 n.2.

¶21.    The State cites ***Richardson v. State***, 767 So. 2d 195 (Miss. 2000), to support its

argument that the trial court properly granted its request for a jury instruction on burglary.

Richardson was indicted for capital rape. ***Id.*** at 200. The trial court denied his request for

a jury instruction on the lesser offense of gratification of lust. ***Id.*** On review, this Court

found that evidence supported the requested instruction. ***Id.*** The Court distinguished lesser-

offense instructions, which may be obtained by the accused only, from lesser-included

offense instructions, which may be obtained by either party, stating "it is those [jury

instructions] offered by the State which must pass fair notice muster under the due process

clauses of our state and federal constitutions." ***Id.*** at 201 (citing ***Hailey v. State***, 537 So. 2d

411, 419 (Miss. 1988) (Robertson, J., concurring)). However, the Court found that

Richardson had been entitled to the instruction because the indictment specifically had stated

11

the elements of gratification of lust, and for that reason, either Richardson or the State could have requested the instruction. *Id.*

¶22. *Richardson* is plainly distinguishable from this case. In *Richardson*, this Court held that the defendant was entitled to a lesser-offense instruction because the indictment actually set out the elements of that lesser offense. In this case, Gause's indictment did not charge him with the elements of burglary. And, under this Court's precedent, burglary is not a lesser-included offense of capital murder. *Doss*, 709 So. 2d at 378; *Ballenger*, 667 So. 2d at 1252-55; *Gray*, 472 So. 2d at 417; *Cannaday*, 455 So. 2d at 724-25; *In re Jordan*, 390 So. 2d at 85. The State was not entitled to a lesser-offense instruction, because only the accused may request that the jury be instructed on a lesser offense, which operates as a waiver of notice in the indictment. *Griffin*, 533 So. 2d at 448 n.2. The trial court clearly erred by granting the State's request for an instruction on burglary, because burglary is not a lesser-included offense of capital murder, and because the State was not entitled to a lesser-offense instruction. We reverse and render Gause's conviction of burglary.

> II. WHETHER THE TRIAL COURT ERRED BY NOT ALLOWING DEFENSE COUNSEL TO VOIR DIRE THE STATE'S EXPERT, DR. STEVEN HAYNE, ON HIS QUALIFICATIONS.

¶23. Gause argues that the trial court abused its discretion by prohibiting his voir dire of Dr. Steven Hayne, the forensic pathologist who performed the autopsy of Swords. Before the State called Dr. Hayne, the following occurred:

> Mr. Shelton: Judge, it's my understanding that they're going to attempt to call Dr. Steven Hayne. I guess I have an objection, or at least a request of voir dire of his qualifications prior to him being allowed to take the stand in front of the jury. We'd object to him, not only on discovery basis, but on the grounds that he is not a board certified pathologist. It's my understanding that

12

that's what he would be here to give testimony to. I think that he is not the director of the state board there in Jackson; that there's been some serious questions as to his, I guess his qualifications to serve as an expert witness in recent years from the evidence in case of others and would object to him being a witness on those grounds.

The court: Your objection will be overruled, Mr. Shelton. The Supreme Court of the state has ruled that Dr. Hayne is perfectly qualified to testify as a pathologist. I don't know where this nonsense got started about him not being qualified to serve or to testify as a pathologist. Tyler Edmond[s]'s case never suggests that. As a matter of fact, that's where they said he was qualified.

Dr. Hayne took the witness stand, and the prosecutor questioned him about his qualifications as a forensic pathologist. Then, this exchange occurred:

The court: Counsel, excuse me just one moment. You've tendered as an expert. If is, [sic] do you have questions of voir dire?

Mr. Shelton: No, Your Honor. It's my understanding that the court has already ruled on that.

The court: All right. Very well.

Mr. Farris: That's exactly what I was functioning on.

The court: You may proceed to question him as an expert.

¶24. Gause argues that the trial court refused to permit him to voir dire Dr. Hayne. He argues that this ruling was an abuse of discretion, because not only did the ruling deprive Gause of his right to voir dire Dr. Hayne, but, without voir dire, the trial court had lacked sufficient information to assess Dr. Hayne's qualifications. Gause claims the ruling prejudiced him, because Dr. Hayne's testimony about Swords's wounds impacted his defense of self-defense.

13

¶25.    As the trial court correctly recognized, this Court held in *Edmonds v. State*, 955 So.

2d 787, 792 (Miss. 2007), that "Dr. Hayne is qualified to proffer expert opinions in forensic

pathology." However, the Court also stated that "a court should not give such an expert carte

blanche to proffer any opinion he chooses." *Id.* In *Edmonds*, this Court excluded Dr.

Hayne's testimony on a two-shooter theory because it was scientifically unfounded. *Id.*

Justice Oliver Diaz filed a specially concurring opinion that questioned Dr. Hayne's

credentials to testify as a forensic pathologist. *Id.* at 802.

¶26.    In *Nelson v. State*, 10 So. 3d 898, 903 (Miss. 2009), Nelson argued that the trial court

had erred by preventing his voir dire of Dr. Hayne. Citing the specially concurring opinion

in *Edmonds*, Nelson objected to Dr. Hayne's qualifications after Dr. Hayne had testified to

his work and educational background. *Id.* The trial court overruled the objection because

Dr. Hayne had not yet given an opinion in the case. *Id.* After Dr. Hayne testified about his

physical findings in the autopsy, the trial court offered to allow Nelson to voir dire Dr. Hayne

on his qualifications, but Nelson declined. *Id.* at 903-04. Later, Nelson objected to Dr.

Hayne's anticipated testimony that drag marks indicated the victim had been kidnapped, but

decided to wait until Dr. Hayne had rendered that opinion to challenge its reliability. *Id.* at

904. Following cross-examination, the trial court gave Nelson another opportunity to voir

dire Dr. Hayne as to his qualifications, but Nelson declined. *Id.* This Court held that:

> We find that the trial court did not err by not allowing Nelson to voir dire Dr.
> Hayne. As the record reflects, the trial court initially denied Nelson's objection
> to Dr. Hayne's qualifications because he had not yet testified to his opinion in
> the case. Thereafter, the trial court gave Nelson numerous opportunities to
> voir dire Dr. Hayne on his opinions. However, Nelson declined to voir dire
> Dr. Hayne on a few occasions, and following cross-examination of the doctor,

14

Nelson withdrew his request. Accordingly, this assignment of error is without merit.

*Id.* at 905.

¶27. Gause argues that *Nelson* is distinguishable, because he never declined to voir dire Dr. Hayne. However, the record reflects otherwise. Gause's initial voir dire request was coupled with a challenge to Dr. Hayne's ability to testify. The trial court's ruling shows the court rejected Gause's challenge to Dr. Hayne's ability to testify. The trial court correctly found that *Edmonds* had declared Dr. Hayne qualified to testify as a forensic pathologist in the courts of this state. After the State elicited testimony from Dr. Hayne that established his education and work history, the trial court expressly afforded Gause an opportunity to voir dire Dr. Hayne as to his qualifications. However, Gause refused on the ground that his understanding of the court's earlier ruling was that voir dire would not be permitted. Instead, Gause either could have taken advantage of the trial court's offer of voir dire, or asked the trial court to clarify its earlier ruling. As in *Nelson*, Gause was given, but declined, the opportunity to voir dire Dr. Hayne. Therefore, this assignment of error is without merit. Moreover, on the basis of this Court's holding in *Edmonds*, the trial court did not err by accepting Dr. Hayne as an expert in the field of forensic pathology. *See Edmonds*, 955 So. 2d at 792.

> III. WHETHER THE TRIAL COURT ERRED BY DISMISSING VENIRE PERSONS BASED ON PRIOR JURY SERVICE RATHER THAN ALLOWING THESE VENIRE PERSONS TO EXCUSE THEMSELVES IF DESIRED.

¶28. Gause argues that the trial court committed reversible error by excusing two potential jurors because they had served on a jury in the past two years, rather than permitting those

15

jurors the discretion to decide whether or not to serve. During jury qualifications, the trial court asked the venire if any person had served on a jury in the past two years. Two venire persons responded that they had served on a jury together in the Circuit Court of Pontotoc County in the previous year.[3] The trial court told each juror "You'll be excused. You'll be free to go." Gause argues that the trial court erred by excusing the potential jurors, because Mississippi Code Section 13-5-25 provides a personal privilege for persons who have served within the past two years that must be claimed by the potential juror.

¶29.   Mississippi Code Section 13-5-1 sets out who is competent to serve on a jury:

> Every citizen not under the age of twenty-one years, who is either a qualified elector, or a resident freeholder of the county for more than one year, is able to read and write, and has not been convicted of an infamous crime, or the unlawful sale of intoxicating liquors within a period of five years and who is not a common gambler or habitual drunkard, is a competent juror. No person who is or has been within twelve months the overseer of a public road or road contractor shall, however, be competent to serve as a grand juror. The lack of any such qualifications on the part of one or more jurors shall not, however, vitiate an indictment or verdict. Moreover, no talesman or tales juror shall be qualified who has served as such talesman or tales juror in the last preceding two years, and no juror shall serve on any jury who has served as such for the last preceding two years. No juror shall serve who has a case of his own pending in that court, provided there are sufficient qualified jurors in the district, and for trial at that term.

Miss. Code Ann. § 13-5-1 (Rev. 2002). According to Mississippi Code Section 13-5-23, "[a]ll qualified jurors shall be liable to serve as jurors, unless excused" for cause. Miss. Code Ann. § 13-5-23 (Supp. 2010). Mississippi Code Section 13-5-25 provides that certain jurors

---

[3] Another juror responded that she had served on a grand jury within the last year, and the trial court excused that juror. Gause does not complain on appeal of this juror's exclusion.

16

are exempt from jury service as a personal privilege. Miss. Code Ann. § 13-5-25 (Supp. 2010). The statute states, in pertinent part:

> Every citizen over sixty-five (65) years of age, and everyone who has served as a grand juror or as a petit juror in the trial of a litigated case within two (2) years, shall be exempt from service if the juror claims the privilege. No qualified juror shall be excluded because of any such reasons, but the same shall be a personal privilege to be claimed by any person selected for jury duty. Any citizen over sixty-five (65) years of age may claim this personal privilege outside of open court by providing the clerk of court with information that allows the clerk to determine the validity of the claim.

Miss. Code Ann. § 13-5-25 (Supp. 2010).

¶30. This Court has held that each potential juror must assert the exemptions provided in Section 13-5-25. *Spires v. State*, 10 So. 3d 477 (Miss. 2009) (quoting *Adams v. State*, 537 So. 2d 891, 894 (Miss. 1989)). In order for a potential juror to be excused, the individual juror must assert the privilege and ask to be excused. *Id.* Thus, it is improper for a trial court automatically to exclude potential jurors on the basis of their prior jury service within the past two years. Rather, a potential juror who has served on a jury within the past two years must claim the privilege. Miss. Code Ann. § 13-5-25 (Supp. 2010).

¶31. It is error for a trial court automatically to excuse jurors on the basis of their prior jury service. Miss. Code Ann. § 13-5-25 (Supp. 2010). However, this issue is procedurally barred because "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." *Myers v. State*, 565 So. 2d 554, 557 (Miss. 1990). Gause did not contemporaneously object to the composition of the jury, and he raises this issue for the first time on appeal. In *Spires*, this Court held that the trial court's erroneous disqualification of two potential jurors based on prior jury service was procedurally barred

17

for failure to object at trial. *Spires*, 10 So. 3d at 483. Notwithstanding the procedural bar, the Court found that the error was harmless, because Spires had not claimed any constitutional violation or that he was in any manner prejudiced by the dismissal of the potential jurors. *Id.*; *see also Trevillion v. State*, 26 So. 3d 1098, 1102 (Miss. Ct. App. 2009). Similarly, Gause makes no claim of constitutional error, nor does he explain how he was prejudiced by the dismissal of the two potential jurors. Accordingly, we find that this issue is procedurally barred and, notwithstanding the procedural bar, the error was harmless.

## CONCLUSION

¶32. The trial court erred by granting the State's request for a jury instruction on burglary. Burglary is not a lesser-included offense of capital murder with the underlying felony of burglary, and only the accused, not the State, may request a lesser-offense instruction. Gause's other issues are without merit. We affirm Gause's conviction of manslaughter; we reverse and render Gause's conviction of burglary.

¶33. **CONVICTION OF MANSLAUGHTER AND SENTENCE OF TWENTY (20) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH CONDITIONS, AFFIRMED. CONVICTION OF BURGLARY OF A DWELLING WITH INTENT TO COMMIT AN ASSAULT THEREIN AND ACCOMPANYING SENTENCE, REVERSED AND RENDERED.**

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR, PIERCE AND KING, JJ., CONCUR. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR AND PIERCE, JJ.**

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶34. While I agree with the result reached by the majority, I write separately to express additional concerns regarding the qualification of expert witnesses and the conflicts in our

18

law regarding the practice of excluding/exempting from juries those who have served within the preceding two years.

*Qualification of Experts*

¶35.   Given the equivocal and inarticulate manner in which defense counsel sought, outside the jury's presence, to prevent Dr. Steven Hayne's testifying as an expert witness, it cannot be said that the trial judge was in error for not having sustained the extremely inartful objection, even though the judge apparently based his ruling on an understanding that this Court, in an entirely different and unrelated case, ". . . has ruled that Dr. Hayne is perfectly qualified to testify as a pathologist."   While it is true that this Court did make such an observation in one case, that should not be taken as eternal, nonexpiring judicial anointment of Dr. Hayne as an expert pathologist for all of time and in every case in which he might thereafter be tendered to offer expert testimony in accordance with Mississippi Rule of Evidence 702.  "[I]t would be absurd to conclude that one can become an expert simply by accumulating experience in testifying." ***Thomas J. Kline, Inc. v. Lorillard, Inc.,*** 878 F.2d 791, 800 (4th Cir. 1989).  *See also **Tokio Marine & Fire Ins. Co. v. Grove Mfg. Co.***, 958 F.2d 1169, 1175 n.3 (1st Cir. 1992) (extensive experience as an expert witness "is not an automatic qualification guaranteeing admission of expert testimony").

¶36.   Notwithstanding this Court's recognition of Dr. Hayne's qualifications as an expert as they appeared in the record before this Court in ***Edmonds v. State***, 955 So. 2d 787 (Miss. 2007), this witness was not thereby awarded lifetime certification as an expert in the field of pathology, or in the subspecialty of forensic pathology.  Rather, each and every time that he is tendered as an expert, his credentials must be proven anew, if not stipulated by all parties,

19

and the party or parties adverse to the litigant sponsoring Dr. Hayne, and any other proposed expert tendered by a litigant, must be given the opportunity to *voir dire* (in this context, *cross-examine*) him on his proffered qualifications as presented through the direct examination by the sponsoring party. This in-court process must have been completed *before* the trial judge renders a decision, in the presence of the jury, on the question of whether the witness may testify as an expert.

¶37.  In this case, the State called Dr. Hayne to the witness stand and, after he had been sworn, the prosecutor proceeded to question him at length, in the presence of the jury, concerning his medical education and licensure, his professional affiliations, an explanation of pathology and its branches, and his experience in the field of pathology. In short, the attorney for the State conducted a rather standard examination of Dr. Hayne about his qualifications; and, although the prosecutor stopped short of actually tendering the witness as an expert in anything at all, no defense objection occurred, and the following exchange ensued between defense counsel and the trial judge:

> **THE COURT:** Counsel, excuse me just one moment. You've tendered as an expert.[4]  If is, *do you have questions of voir dire?*[5]
>
> **MR. SHELTON**:[6] No, Your Honor. It's my understanding that the Court has already ruled on that.
>
> **THE COURT:** All right. Very well.

---

[4]The judge seems to have been addressing the prosecutor at this point.

[5]This question apparently was asked of defense counsel, and indeed, it was he who responded to it.

[6]Defense attorney.

20

**MR. FARRIS:**[7] That's exactly what I was functioning on.

**THE COURT:** You may proceed to question him as an expert.[8]

(Emphasis added.)

¶38. Although the State neglected to tender Dr. Hayne as an expert in any field, the trial judge seemed to recognize from the contextual circumstances that this was what the prosecutor had meant to do, as evidenced by the judge's statement, apparently to the prosecutor, "[y]ou've tendered as an expert." Then, the judge correctly offered defense counsel an opportunity to examine, or *voir dire,* Dr. Hayne, in the jury's presence. At that point, the witness had not been asked about anything other than his qualifications in the medical specialty of pathology; so, it was clear that the trial judge was affording defense counsel his client's right to question Dr. Hayne in that regard, the very thing about which counsel had awkwardly attempted to object a short time earlier.[9] However, either for want of understanding, or for some other unfathomable reason, counsel chose not to question Dr. Hayne about his qualifications. Moreover, he did not object to Dr. Hayne's testifying as an expert pathologist when he had not been explicitly tendered by the State or accepted by the court as an expert in that field. It is elementary that defense counsel effectively waived his client's right to *voir dire* Dr. Hayne on his qualifications as an expert in the field of

---

[7]Prosecutor.

[8]Without objection, the prosecutor proceeded to do so.

[9]The lawyer's statement to the court that, "I guess I have an objection. . . [to] I guess his qualifications," certainly did not convey a "specific ground of objection." M.R.E. 103(a)(1).

21

pathology; and, similarly, he waived objection to the lack of the trial court's formal acceptance of Dr. Hayne as an expert in any particular field. M.R.E. 103(a).

*Prior Jury Service as an Exemption*

¶39. The majority rightly recognizes the case law which clearly holds that a potential juror who has served on a jury within the past two years is not automatically exempt. Maj. Op. ¶ 30 (citing **Spires v. State**, 10 So. 3d 477 (Miss. 2009) (quoting **Adams v. State**, 537 So. 2d 891, 894 (Miss. 1989)). These cases rely on the plain language of Mississippi Code Section 13-5-25 (Supp. 2009) that "everyone who has served as a grand juror or as a petit juror in the trial of a litigated case within two (2) years, shall be exempt from service *if the juror claims the privilege*." (Emphasis added.)

¶40. Equally plain, however, is the mandatory language of Mississippi Code Section 13-5-1 (Rev. 2002) that "no juror shall serve on any jury who has served as such for the last preceding two years." In a footnote, the **Spires** opinion stated that "[t]his language applies only to the outdated practice of using tales jurors for circuit court juries." **Spires**, 10 So. 3d at 482 n.4. I respectfully do not share the same understanding of Section 13-5-1, and, like the trial judge in the present case, read Section 13-5-1 automatically to disqualify venire members for such prior jury service. He and I are not alone. As one practitioner recently noted:

> A[n] interesting item exists in the scheme enacted by the Legislature regarding jury selection. Potential jurors who have actually served in a completed jury trial are not qualified to serve on a jury within two years. In addition, they also have an exemption that they may claim when called to serve within two years of their last jury trial. These two situations appear mutually incompatible. Trial judges surely approach this situation differently based on their local practices. Be aware of this legal incongruity when engaging in jury selection;

22

you never know when you may be able to use it to make a situation work to your advantage.

John Helmert, *Going to Trial (Now What Do I Do?): Jury Selection in Mississippi Trial Courts*, 28 Miss. C. L. Rev. 231, 236-37 (2009) (comparing Mississippi Code Sections 13-5-1 and 13-5-25) (footnotes omitted).

¶41. Nevertheless, in examining the legislative history, we find that, in 1976, the legislature effectively repealed Section 13-5-1's language that "no juror shall serve on any jury who has served as such for the last preceding two years." As explained in *Adams*, 537 So. 2d at 893-94:

> In the face of repeated opinions from this Court to the effect that our jury selection laws were directory and not mandatory, *see, e.g., Rhone v. State*, 254 So. 2d 750, 752 (Miss.1971), the legislature in 1976 amended Section 13-5-25 "to clarify the personal privilege for exemption of a juror who has served within two years; and for related purposes." Miss. Laws, ch. 464 (1976). This amendment added to Section 13-5-25 a sentence which reads:

>> No qualified juror shall be excluded because of any such reasons [being over sixty-five or having served on a jury within two years], but the same shall be a personal privilege to be claimed by any person selected for jury duty.

> The statute makes clear that neither the circuit court – and certainly not the deputy circuit clerk – ha[s] authority to act unilaterally and strike from the jury list persons over sixty-five and who have served within the past two years.

*Adams* did not mention the contradictory language of Section 13-5-1; but, as the latest pronouncement of the legislature's will, Section 13-5-25 controls. *See Belk v. Bean*, 247 So. 2d 821, 826-27 (Miss. 1971) (explaining the doctrine of "implied amendments") (citations and quotations omitted). Thus, to clarify, venire members shall *not* be excused automatically from jury service for having served on a jury within the last two years. That statute is no

23

longer in effect, and instead, prior jury service is an exemption that must be claimed by the individual venire member under Mississippi Code Section 13-5-25.

**WALLER, C.J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, LAMAR AND PIERCE, JJ., JOIN THIS OPINION.**