KING, Justice,
concurring in part and dissenting in part:
¶ 19. While I concur with the majority’s determination that Hall’s conviction *208 for accessory after the fact to burglary was improper given that Hall was not indicted for accessory after the fact to burglary, I believe that the proper disposition is to reverse and render Hall’s conviction; therefore, I respectfully dissent from the disposition.
¶ 20. On September 1, 2010, Hatties-burg police were called to the Spanish Oaks Apartments due to the suspicions of the apartment manager, Douglas Raison, and his wife, Eulis Irene Cochran, that a burglary was occurring. Cochran and Rai-son testified that they saw two men, later identified as Tommy Moore and David Pryor, enter a vacant apartment[7] at about 8:30 or 9:00 p.m. They witnessed a third man, later identified as Jason Hall, the defendant, sitting in an SUV parked near the next building over.[8] Hall remained in the SUV for the duration of the alleged burglary.[9] The police arrived, and Moore and Pryor began running toward the vehicle. One of them threw something. All three men were then apprehended by police. A Smith and Wesson handgun was found approximately ten yards from the vehicle. A window pane in the vacant apartment was found to be displaced, and the door to the apartment- may have been “messed up.” The record contains no evidence that any items were taken from the apartment, and Raison testified that “there was really nothing in there for them to steal.”
¶21. Hall was indicted for burglary, and the case went to trial.[10] At trial, after the State and the defense both rested, the court and counsel reviewed the jury instructions. At the outset, the State announced that it had a “supplemental instruction” for accessory after the fact that it needed to present to the court.[11] When the instruction, S-9, for accessory after the fact, was presented, Hall objected, and the State indicated that the instruction was warranted in the event the jury believed the defense:
THE COURT: S-9?
MR. ROSE: We would object to that. Isn’t that covered basically in the definition of accomplice? It seems at this point we’re hitting everything. We would object.
THE COURT: And the basis of your objection is it’s covered under the accomplice instruction?
*209 MR. ROSE: There’s an instruction on being an accomplice, an aider, an abettor, a presumption of theft, accessory after the fact. We object.
THE COURT: Why are we adding instructions at this time?
MR. VAUGHN: Judge, I just got to thinking when the proof was coming through that if the jury happened not to believe — if they happened to believe Katie Jones, that this man went over there with just the knowledge that he was going over there to drop a buddy off that would certainly — and I would contend if they believe he’s not guilty of burglary. But when two of his buddies come back, a gun is thrown out, it’s pretty obvious that a burglary has taken place. It’s just if the jury happens to believe that he wasn’t guilty of the burglary because he had no knowledge that his friends were going over there to do wrong, they became an accessory after the fact when they returned to the vehicle running, throwing guns with the police in [sic] route.
THE COURT: Response?
MR. ROSE: That’s—
MR. VAUGHN: I’m sorry, Judge. Ido have a case that’s very similar to this if the Court wishes to see it.
THE COURT: Is this where you came up with this theory to match the proof that was—
MR. VAUGHN: Well, yes, sir. I wasn’t sure if Katie Jones would indeed testify. I was not sure if she would or not, and I waited until she gave testimony. I had this ready. I just didn’t know if she would testify or not.
¶22. The jury returned a verdict of guilty of accessory after the fact to burglary. In his appeal, Hall first argues that the trial court erred by instructing the jury that it could find Hall guilty of accessory after the fact to burglary, given that the indictment did not charge him with this crime, nor did he request the instruction. Hall also argues that the evidence at trial was insufficient to support the guilty verdict for accessory after the fact to burglary.
¶ 23. Hall argues that the State’s aeces-sory-after-the-fact-to-burglary jury instruction was improper, given that he was not indicted for accessory after the fact and the instruction deprived him of his right to notice of the crimes charged. The State argues that the evidence, indeed Hall’s own defense witness’s testimony, supports such an instruction. Clearly, allowing the State to hear the accused’s defense at trial, and then tailor a jury instruction with a new, unindicted charge to the defense’s evidence, which is what the State admits and declares it did here, is highly prejudicial to any defense to the indictment. No defense is ever safe if the State can then use the defense itself to instruct the jury on an entirely new charge for which the defendant has no notice.
¶ 24. Because Hall was acquitted of the indicted offense and convicted of an offense for which he was not indicted and never received notice, in violation of both Section 26 and Section 27 of Article 3 of the Mississippi Constitution, and Hall did not waive indictment or notice, this Court should reverse and render Hall’s aceesso-ry-after-the-fact conviction. Gause v. State, 65 So.3d 295, 299-302 (Miss.2011) (“[TJhere is a crucial difference between a jury instruction on a lesser-included offense, which either the State or the accused may request, and an instruction on a lesser offense, which only the accused may request.”) (“Gause’s indictment did not charge him with the elements of burglary.... The trial court clearly erred by granting the State’s request for an instruction on burglary, because burglary is not a *210 lesser-included offense of capital murder, and because the State was not entitled to a lesser-offense instruction. We reverse and render Gause’s conviction of burglary.”); Harris v. State, 723 So.2d 546, 549 (Miss. 1997) (trial court’s decision to enter directed verdict of acquittal, but to allow State to proceed to trial on lesser-included offenses found to be in error and conviction reversed and rendered; stating “[t]he State cannot be allowed to charge only the highest offense and then test the evidence as it goes along until the burden for some lesser offense is met”). Gause is virtually indistinguishable from the present case, since, in Hall’s case, at the request of the State, the jury was instructed on lesser-included offenses to burglary, as well as the lesser offense of accessory after the fact to burglary.[12] The prosecution advocated for an improper conviction for a crime for which it never even attempted to indict Hall.
¶ 25. The majority believes that Hall’s conviction should be reversed and vacated, despite the precedent to the contrary, giving the State the option to indict Hall for accessory after the fact. When we make a determination regarding the disposition in a case, we must consider what such a disposition accomplishes. In this case, reversing and vacating the conviction would accomplish nothing but a waste of judicial resources[13] and injustice to Hall, especially in light of the serious double jeopardy concerns that arise in this case, as discussed below.
¶ 26. In addition to complaining about being convicted for a crime for which he was not indicted, Hall also challenges the legal sufficiency of the evidence in support of his conviction for accessory after the fact to burglary. See Taylor v. State, 110 So.3d 776, 782 (Miss.2013). This Court “must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. When the evidence viewed in the light most favorable to the State fails to show beyond a reasonable doubt that the accused committed the act charged, “and *211 that he did so under such circumstances that every element of the offense existed,” the evidence is insufficient to support the conviction and the appellate court must reverse and render. Id. (emphasis added); Johnson v. State, 81 So.3d 1020, 1023 (Miss.2011).
¶ 27. A person is guilty of accessory after the fact if he “concealed, received, or relieved any felon, or having aided or assisted any felon, knowing that such person had committed a felony, with intent to enable such felon to escape or to avoid arrest, trial, conviction or punishment.” Miss.Code Ann. § 97-1-5 (Rev.2006).[14]
¶ 28. Hall argues that the State put forth no evidence supporting a conviction for accessory after the fact. He argues that the State presented no evidence that he concealed, received, relieved, aided, or assisted any felon, nor did it present any evidence of knowledge. The State argues that there “was sufficient credible evidence for inferring that Hall assisted the burglars by attempting to assist them in avoiding arrest after the burglary was accomplished.” (Emphasis added). The State continues that “if the jury believed that Hall went to the apartment complex to assist Pryor in visiting his girl friend, then there would be a basis for inferring that Hall possibly assisted Pryor and Moore after knowing that they had possibly burglarized an apartment.” (Emphasis added). It further argues that Lieutenant Bounds’s testimony that he saw men running from the apartment, and saw one man throw a handgun, which was ultimately found approximately ten yards from the vehicle, proves knowledge beyond a reasonable doubt. It also argues that the photographs “show the distance between the burlgarized apartment and the vehicle.” Thus, concludes the State, “[u]n-der these facts, it could be inferred that Hall would have known that he was assisting the culprits in trying to avoid the police who were rapidly approaching.”
¶ 29. The State put forth no evidence that Hall concealed, received, relieved, assisted, or aided Pryor and Moore. Indeed, the record is unclear as to how the three men were apprehended (and does not even reveal whether Hall started or moved the vehicle),[15] given that police were undisput-ably present before Pryor and Moore entered the SUV. Further, no evidence was presented that Hall had any knowledge that a felony occurred. It was nighttime, the vehicle was not parked very close to the apartment, and there is no evidence that Hall saw Pryor and Moore enter the apartment, no evidence that he knew that they were not authorized to be in that particular apartment, and no evidence that Pryor and Moore actually stole anything from the apartment (thus no evidence Hall saw them carrying stolen goods). No one even gave any testimony describing in which direction the vehicle was facing: toward or away from the apartment.
¶ 30. The State likewise failed to put forth evidence of the intent requirement. No evidence exists that Hall intended to assist Pryor and Moore in escaping or *212 avoiding arrest. Indeed, the police were already present when Pryor and Moore exited the apartment. The State’s closing argument recognizes the specious nature of the State’s evidence to prove Hall guilty of accessory after the fact. The State argued:
You find him not guilty, that’s your decision. But he is guilty of at least being an accessory. At least. He knew what they were doing. Your life experiences tell you that. That’s the reason you’ve got to be at least 21 or so, so that way you can appreciate credibility. Things of that nature. He knew it and you know he knew it.
If somebody comes to a car with a gun, they’re up to no good. And then he tried to leave from the police, but they boxed him in. One went around the side and one came straight at him. Instead of pressuring these offices [sic], they need to be thanked. They went into a place where they knew guns were out. They were out numbered. They still beat them. They still got them.
Ladies and gentlemen, it’s your case and your decision, but he’s at least guilty of something.
(Emphasis added). The jurors’ life experiences certainly do not amount to proof beyond a reasonable doubt that Hall was guilty of accessory after the fact. Viewing the evidence in a light (very) favorable to the State, the State at the very most showed that one could infer that Hall saw two men running toward his car, he saw one throw a gun, and both men entered his vehicle. No reasonable factfinder could find beyond a reasonable doubt that Hall concealed, received, relieved, aided, or assisted felons with knowledge of the felony and the intent to help them avoid arrest. The evidence is simply not sufficient to support a conviction of accessory after the fact. It appears that the jury convicted Hall for, as the State urged, being guilty of “something.”
¶ 31. Rather than go through the proper procedures of altering an indictment through the grand jury, the prosecution chose, and indeed advocated, over the objection of the defendant, to improperly place an unindicted charge before the jury, subjecting the defendant to a trial by ambush for accessory after the fact. The prosecution knew, or should have known, the extreme impropriety and unconstitutionality of this action due to the clear case law on the matter, as well as the straightforward federal and Mississippi constitutional provisions expressly forbidding the actions taken by the prosecutor. Indeed, the majority admits that the legal rule in this case is absolute, and deviation therefrom is plain, clear, obvious error. Maj. Op. ¶ 10. The prosecutor’s deliberate conduct chartered this improper course. Double jeopardy includes a “protection against a second prosecution for the same offense after conviction.” Rowland v. State, 98 So.3d 1032, 1037 (Miss.2012) (quoting Powell v. State, 806 So.2d 1069, 1074 (Miss.2001)); see also United States v. Dinitz, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). Double jeopardy protects “a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where bad-faith conduct by judge or prosecutor threatens the harassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict the defendant.” Dinitz, 424 U.S. at 611, 96 S.Ct. 1075 (internal quotations and citations omitted). Thus, the prosecutor, who knew that a prosecution absent an indictment is unconstitutional, exercised his prerogative in a plainly unconstitutional manner, intentionally put Hall on trial for an unindicted charge, and obtained a conviction on evidence that was, *213 at best, specious. Further, Hall appealed the sufficiency of the evidence against him, and it is obvious that the evidence was indeed woefully insufficient. Where a conviction is not supported by sufficient evidence, a subsequent trial is barred by double jeopardy. See Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). “The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.” Id. at 11, 98 S.Ct. 2141. The State may not make repeated attempts to convict Hall of accessory after the fact to burglary. Id. It would violate constitutional principles to allow the State to cause such a blatantly unconstitutional error, and then get a “second bite at the apple” to convict Hall. See id. at 17, 98 S.Ct. 2141.
¶ 32. Reversing and vacating this conviction would cause an egregious waste of judicial resources and a serious injustice to Hall, who has been through an entire trial and was illegally convicted at the State’s insistence. Allowing the State a “second bite at the apple” constitutes harassment of Hall and allows the State to commit a bad faith egregious error at Hall’s expense, and then have the opportunity to reindict and retry Hall. Reversing and rendering is the only proper course, and it is in line with this Court’s precedent. See Gause, 65 So.3d 295. To do otherwise, while suggesting that no other action can be taken in this case, embraces form over substance. Therefore, I disagree with the majority’s disposition in this case, and believe it causes an unconstitutional injustice.
KITCHENS, J., JOINS THIS OPINION. CHANDLER, J., JOINS THIS OPINION IN PART.

. The apartment the two men allegedly entered was being renovated and contained items such as tile, mortar, and mud.

. Witnesses testified that the SUV was parked near the dumpster. Photos introduced at trial show that the dumpster (and thus the area in which the SUV was located) was not directly adjacent to the apartment that was allegedly burglarized. The photos demonstrate that the SUV was over one building’s length away from the vacant apartment. In fact, based on the photos, which have vehicles in them, it appears that the SUV was located at least seven or eight car lengths away from the road in front of the vacant apartment, with the road being another several feet away from the door of the vacant apartment.

. The testimony was that Hall was in the SUV the entire time. Cochran did testify that Hall “did step out but then stepped back in.” There is no allegation by the State that Hall ever entered or even went near the vacant apartment with the other two men.

. At trial, Katie Jones testified on behalf of Hall. Jones testified that she was living in Spanish Oaks Apartments on September 1, 2010. Jones testified that her sister, Constance Davis, lived with her, and that Pryor was Davis's boyfriend. She testified that Hall gave Pryor a ride to Spanish Oaks for the purpose of Pryor visiting Davis.

. In his post-trial motions, Hall noted that the State’s jury instructions violated Uniform Rule of Circuit and County Court 3.07, which forbids jury instructions that are not prefiled, absent good cause. URCCC 3.07.

. The majority attempts to distinguish Gause from the present case by stating that the case was “quintessential jury nullification.” Maj. Op. at ¶ 15. Nothing in the analysis of the issue in Gause mentioned any analogy to jury nullification. Rather, the entire analysis of the issue was based on the fact that the State requested a lesser-offense, rather than a lesser-included-offense, jury instruction above the objection of the defendant. Gause, 65 So.3d at 299-302 ("[T]here is a crucial difference between a jury instruction on a lesser-included offense, which either the State or the accused may request, and an instruction on a lesser offense, which only the accused may request.”) (“Gause’s indictment did not charge him with the elements of burglary.... The trial court clearly erred by granting the State's request for an instruction on burglary, because burglary is not a lesser-included offense of capital murder, and because the State was not entitled to a lesser-offense instruction. We reverse and render Gause's conviction of burglary.”). Gause is virtually indistinguishable from the present case, since (as the majority emphasizes in describing the Gause case) in Hall’s case, ”[a]t the request of the State, the jury was instructed on” lesser-included offenses to burglary, as well as the lesser offense of accessory after the fact to burglary. Maj. Op. at ¶ 15 (emphasis added).

. The majority quotes Justice Robertson’s concurring opinion, which states that it should "be understood clearly that there are no further proceedings that may be had consistent ‘with this opinion.’ ” Hailey v. State, 537 So.2d 411, 419 (Miss.1988) (Robertson, J., concurring) (emphasis added). Justice Robertson affirms that nothing else may be done in such a case. Indeed, if the trial court is barred from conducting any further proceedings with regard to Hall and any accessory-after-the-fact charge arising from these allegations, it makes little sense not to simply render Hall's conviction.

. This version of the accessory statute is no longer in effect, as the accessory statute was amended in 2012, after Hall allegedly committed the crime; however, the elements of the crime remain the same. 2012 Miss. Laws Ch. 496.

. Cochran testified that “When the police arrived — it's a double opened-end [sic] driveway, and they swarmed in. The two guys started running toward the vehicle, and at that time they were all three apprehended by the police.” Raison testified that when the police arrived, the three men were "By the 4-Runner. In the 4-Runner.” Lieutenant Bounds testified that when the police arrived "[t]hey all broke and run towards the vehicle. ... We approached the vehicle. There were three suspects inside the vehicle.”