458 So.2d 719 (1984)
Jessie Eugene ROBERTS
v.
STATE of Mississippi.
No. 54442.
Supreme Court of Mississippi.
October 10, 1984.
Rehearing Denied November 14, 1984.
George Martin Via, Booneville, for appellant.
Bill Allain, Atty. Gen. by Carolyn B Mills, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, P.J., and DAN M. LEE and ROBERTSON, JJ.
*720 DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Prentiss County wherein the jury found the appellant, Jessie Eugene Roberts, guilty of the murder of his wife, Ruby Roberts. Roberts was sentenced to serve a term of life imprisonment in the custody of the Mississippi Department of Corrections. From his conviction and sentence he brings this appeal. We affirm.
At approximately 6:45 p.m. on December 18, 1981, Jessie Eugene Roberts arrived at the home of a neighbor, Roy Maxie. Maxie testified that Roberts asked him for help. He first asked to borrow $20 for some gasoline, then he said "My wife's laying in the floor with her head blowed off." According to Maxie, Roberts told him that he was in the bathroom when his wife put a shotgun under her chin and killed herself. Maxie directed his son to siphon some gasoline into Roberts' car. Maxie then phoned the Prentiss County Sheriff's Office and handed the phone to Roberts. Roberts reported that his wife had killed herself. Roberts then returned home.
When Roberts arrived back at his house Tom and Eloise Hendrix were parked there. The Hendrixes had made arrangements to meet the Roberts and play cards that evening. Because the Roberts' car was gone when they arrived the Hendrixes had waited in their car assuming that the Robertses would return shortly. Mrs. Hendrix testified that when Eugene Roberts returned he told her that he had been to the drugstore to get his wife's medicine. Roberts then walked up to the house, opened the door and called for the Hendrixes. He stated: "I didn't mean to do it baby, my baby."
Tom Hendrix testified that as he went into the Roberts house with Eugene Roberts, Roberts stated, "Oh, Lord, he said he'd do it and he done it."
Carl Sartain, a Prentiss County Deputy Sheriff, testified that he and Deputy Bob Glover responded to Roberts call. When they arrived, they found Eugene Roberts lying on a couch in the living room. Mrs. Roberts' body was lying on the floor. Most of her head had been blown away by a shotgun blast. Her hands were found in her jacket pockets. There was blood and brains on three walls of the room. An empty shotgun shell was found in front a heater located in the middle of the room. Deputy Sartain testified that the only other sign of a disturbance in the house was a crumpled egg carton and a broken egg found on the floor of the kitchen. A shotgun was found in a bedroom just off the living room.
Deputies Sartain and Glover took Roberts into custody. They advised him of his rights and he signed a waiver of those rights. Roberts then gave two consistent statements. Although no written statement was introduced into evidence, Officer Sartain testified as to the substance of those statements. He stated that Roberts told him that earlier in the day he and Mrs. Roberts had gone to the drugstore. They left the drugstore about 5:00 p.m. and went to Barbara Joiner's house. They visited with Mrs. Joiner for an indeterminate period of time and then went home. After they arrived home they remembered that they needed something from the grocery store. Roberts then went inside the house and built a fire in the stove in the living room and then left to go to the grocery store. Mrs. Roberts remained at home. When Roberts returned home he found Mrs. Roberts lying on the floor dead. He put the groceries up and then picked up the gun and put it in the bedroom. He then went to Roy Maxie's home and called the Sheriff's office.
Joann Lollar testified that she and her husband owned a small general store. She was running the store on December 18, 1981. At approximately 5:15 to 5:30 she saw Eugene and Ruby Roberts in her store. They left between 5:30 and 6:00 o'clock. Mrs. Lollar testified that she did not see Eugene Roberts again that day before she closed the store at approximately 6:00 p.m.
Mary Ings, Mrs. Roberts' sister, testified that Mrs. Roberts once told her that now that she had married into the Roberts family one of the Roberts men would kill her. *721 Mrs. Ings also testified that Eugene Roberts' brother once threatened to have Ruby Roberts sent to jail for bigamy because she had never divorced another man before marrying Eugene Roberts. The brother threatened to blow Ruby Roberts' head off someday. Mrs. Ings also testified that Eugene Roberts had threatened to blow Ruby Roberts' head off on a prior occasion.
On all of the above detailed testimony, the jury returned a verdict of guilty of murder.

THE LAW
Roberts' first assignment of error is that the trial court erred in not instructing the jury on the lesser included offense of manslaughter. The defense requested Instruction D-13 which contained the possibility of the jury returning a verdict of guilty of manslaughter. That instruction read:
If you find that the State has failed to prove any one of the essential elements of the crime of murder beyond a reasonable doubt, and to a moral certainty, and to the exclusion of every other reasonable hypothesis consistent with his innocence, you must find the Defendant not guilty of murder and you will proceed with your deliberations to decide whether the state has proved beyond a reasonable doubt, to a moral certainty and to the exclusion of every other reasonable hypothesis consistent with the Defendant's innocence, all the essential elements of the crime of manslaughter.
The crime of murder is distinguished from the crime of manslaughter by the absence or failure to prove willfulness or deliberate design.
Manslaughter is defined by § 97-3-35 Miss. Code Ann. (1972) as:
The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter.
As can be seen by comparison of the requested instruction to § 97-3-35, the instruction fails to properly define manslaughter. Therefore the circuit court properly refused to give it. This is not to say the facts of this case did not warrant a manslaughter instruction. Roberts' statement that "I didn't mean to do it baby, my baby" is certainly sufficient on which to base an instruction on manslaughter and would have supported a verdict of guilty of manslaughter. If there is any evidence that may warrant a manslaughter instruction certainly one should be given. The fault in the instant case is that it was the duty of the defense counsel to offer a proper manslaughter instruction. Having failed to do so he may not complain of not having been given an instruction which did not properly define manslaughter.
Roberts' second assignment of error deals with the circumstantial evidence instructions. The court granted three instructions on circumstantial evidence. In addition, the court granted Instruction S-1 which did not state the proper burden of proof in a circumstantial evidence case. Roberts argues that the instructions were therefore in hopeless conflict.
It has long been the rule that if instructions correctly state the law when read together as a whole, then there is no error. Hickombottom v. State, 409 So.2d 1337 (Miss. 1982); Anderson v. State, 397 So.2d 81 (Miss. 1981); Norman v. State, 385 So.2d 1298 (Miss. 1980). Also, if an error in one instruction is cured by another when the instructions are considered as a whole the error will not be reversible. Church v. State, 288 So.2d 855 (Miss. 1974), appeal after remand 317 So.2d 386 (Miss. 1975), cert. den. 423 U.S. 1016, 96 S.Ct. 450, 46 L.Ed.2d 388 (1975).
We are of the opinion that when the instructions are considered as a whole the jury was properly instructed as to the required burden of proof. Therefore, we find no merit to this assignment of error.
*722 Roberts next argues that the trial court erred in failing to grant Instruction D-15. D-15 reads as follows:
The court instructs the jury that you may consider the lack of cogent motive in determining the sufficiency of the evidence to sustain a conviction of murder.
Roberts is correct in asserting that the state failed to prove motive; however, proof of motive is not essential to a conviction for a felonious homicide. Barnett v. State, 232 Miss. 208, 98 So.2d 656 (1957); Swanson v. State, 218 Miss. 103, 65 So.2d 232 (1953). Rather than being a matter of law on which the jury should be instructed, this point is more appropriately a point for closing argument. Therefore, we do not find the trial court in error for refusing this instruction.
Finally, Roberts argues that the admission of certain photographs of his wife which depict her condition following the shooting, constitute error. He argues that these photographs had no evidentiary or probative value and were introduced solely to inflame the minds of the jury and prejudice them.
We have reviewed these photographs and their relation to the proof offered by the state. We are of the opinion that these photographs, while admittedly gruesome, do have some probative value and were therefore properly admissible. Cessna v. State, 381 So.2d 173 (Miss. 1980); Hammock v. State, 379 So.2d 323 (Miss. 1980).
Based on all of the foregoing, we hereby affirm Jessie Eugene Roberts' conviction of murder and his sentence of life imprisonment.
AFFIRMED.
WALKER and ROY NOBLE LEE, P. JJ., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
PATTERSON, C.J., not participating.