# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-KA-01766-COA

BENNIE CLARK                                                         APPELLANT

v.

STATE OF MISSISSIPPI                                                  APPELLEE

DATE OF JUDGMENT:            09/22/1998
TRIAL JUDGE:                 HON. C. E. MORGAN III
COURT FROM WHICH APPEALED:   ATTALA COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      RAYMOND M. BAUM
ATTORNEYS FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                             BY:  JEAN SMITH VAUGHAN
DISTRICT ATTORNEY:           DOUG EVANS
NATURE OF THE CASE:          CRIMINAL - FELONY
TRIAL COURT DISPOSITION:     09/22/1998: MURDER: LIFE
DISPOSITION:                 AFFIRMED - 04/18/2000
MOTION FOR REHEARING FILED:  5/1/2000; denied 7/18/2000
CERTIORARI FILED:            ; denied 10/5/2000
MANDATE ISSUED:              10/26/2000


BEFORE SOUTHWICK, P.J., LEE, AND MOORE, JJ.

MOORE, J., FOR THE COURT:

¶1. Appellant Bennie Clark was indicted for the shooting death of Clyde Simmons. After a two day trial in the Attala County Circuit Court, the jury found Clark guilty as charged. Aggrieved, Clark cites the following issues on appeal:

**I. THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT A NEW TRIAL IN THIS CAUSE BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.**

**II. THE TRIAL COURT ERRED IN REFUSING TO GRANT THE DEFENDANT'S PROFFERED JURY INSTRUCTION D-6 THAT THE JURY COULD FIND REASONABLE DOUBT EXISTED DUE TO THE LACK OF PROOF OF MOTIVE.**

Finding no error, we affirm.

# I. FACTS

¶2. In the wee hours of the morning on December 25, 1997, a shooting at the Studio 12 nightclub in Ethel, Mississippi, resulted in Clyde Simmons's death. Many, if not most, of Studio 12's patrons that morning were teenagers. Six witnesses saw Appellant Bennie Clark and Timmie Hubbert involved in a verbal altercation inside the club. Hubbert exited the nightclub, and Clark followed behind him. Several witnesses saw Clark pull a gun from his waistband as he followed Hubbert out the front door of the club. The victim, Clyde Simmons, followed Clark out of the door. Witnesses testified that Simmons was trying to facilitate peace between Hubbert and Clark. Shortly after Hubbert, Clark, and Simmons exited the club, Simmons turned to run back inside the club. As Simmons reached the door and hurled it open, Clark shot Simmons in the back. Five witnesses saw Clark shoot Simmons. Nine witnesses saw Clark with a gun that night.

¶3. A wounded Simmons reached a love seat inside the club and sat on the armrest. Clark followed Simmons back into the club and jumped up on the cushions of the love seat behind Simmons. When Studio 12 owner, Tommy Gene Carr, attempted to diffuse the situation, Clark pointed the gun at Carr. At some point Simmons collapsed onto the floor. Willie Chandler and Eddie Thompson took Simmons to the hospital. Witnesses testified that Clark's gun was large and either chrome or nickel plated.

¶4. Derrick Fletcher testified that he heard a single loud shot which precipitated his exit from the club. He then ran outside to his car. When Fletcher reached his car, John Jamison was backing it out of the parking lot. Fletcher pushed Jamison out of the way and assumed the driver's seat. At some point Clark jumped into Fletcher's car. As Fletcher drove away, he heard more shots which were aimed at his car. Jamison was shot in the neck, and Fletcher's car sustained bullet holes. Fletcher did not see who shot at his car. Further, Fletcher did not see Clark with a gun. Jamison was not mortally wounded. The murder weapon was never recovered, and the source of the second round of shooting was never identified.

¶5. The record revealed some confusion regarding the number of gun shots that rang out that early Christmas morning. Many of the witnesses heard one shot at the time Simmons was shot, and multiple shots after Simmons was transported to the hospital. Witnesses testified that the time lag between the first shot and the subsequent shots was anywhere between a couple of minutes to twenty minutes. There is no dispute that mass confusion ensued when the first shot rang out. When the police arrived to investigate the shooting, they garnered information which led them to suspect that Clark was the culprit. After hearing that the police had obtained an arrest warrant, Clark peacefully turned himself in to the authorities. At trial both Clark and Hubbert denied having a verbal altercation that night. Clark testified that he did not have a gun and he did not shoot Simmons. Clark explained that the witnesses who testified against him, including one witness with whom he was not acquainted, all held grudges against him.

## II. LAW AND ANALYSIS

### I. DID THE TRIAL COURT ABUSE ITS DISCRETION IN REFUSING TO GRANT A NEW TRIAL IN THIS CAUSE BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?

¶6. The decision to grant or deny a motion for new trial is discretionary with the trial court. *McClain v. State*, 625 So.2d 774, 781 (Miss. 1993). The trial court should grant a new trial motion only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice. *Wetz v. State*, 503 So.2d 803, 812 (Miss. 1987). In reviewing the

trial court's denial of a new trial motion, we must accept as true all evidence favorable to the State, and we may not reverse absent an abuse of discretion. *McClain,* 625 So.2d at 781. "The jury is charged with the responsibility of weighing and considering the conflicting evidence and credibility of the witnesses and determining whose testimony should be believed." *Id*.

¶7. The "testimony of a single uncorroborated witness is sufficient to sustain a conviction . . . even though there may be more than one person testifying to the contrary." *Williams v. State*, 512 So.2d 666, 670 (Miss. 1987). In the case *sub judice*, five eyewitnesses saw Clark shoot Simmons in the back. Nine witnesses saw Clark with a gun that night. Four witnesses saw Clark point a gun at Studio 12 owner Gene Carr. Six witnesses saw an argument between Clark and Hubbert and saw Simmons follow the two outside. We must accept this evidence, which is favorable to the State, as true under the above standard of review. In doing so, it is impossible to find that the guilty verdict was against the overwhelming weight of the evidence; therefore, the trial court did not abuse its discretion in overruling Clark's motion for new trial. We find no weight to Clark's argument that the witness testimony was "glaringly inconsistent and contradictory. . . ."

### II. DID THE TRIAL COURT ERR IN REFUSING TO GRANT THE DEFENDANT'S PROFFERED JURY INSTRUCTION D-6 THAT THE JURY COULD FIND REASONABLE DOUBT EXISTED DUE TO THE LACK OF PROOF OF MOTIVE?

¶8. Clark is aggrieved that the trial court did not did not instruct the jury as follows:

The Court instructs the jury that it is not necessary for the State to prove a motive in the killing of Clyde Simmons. However, if you find that the lack of proof of motive creates a reasonable doubt in your mind, then you are instructed to find the defendant not guilty.

¶9. In *Roberts v. State*, 458 So.2d 719, 722 (Miss. 1984), the Mississippi Supreme Court reviewed a trial court's rejection of a similar instruction. The court stated that "proof of motive is not essential to a conviction for a felonious homicide." Clark acknowledges that the State is not required to prove motive in order to procure a guilty verdict; however, Clark argues that he is entitled to the above instruction because the State made motive an issue during *voir dire* by asking members of the *venire* whether they could render a guilty verdict absent proof of motive.

¶10. There is no legal basis for Clark's argument that he is entitled to tell the jury that lack of proof of motive can give rise to reasonable doubt. This very argument was rejected by the *Roberts* court. In affirming the trial court's refusal of a similar instruction, the court stated: "Rather than being a matter of law on which the jury should be instructed, this point is more appropriately a point for closing argument." *Id.*

¶11. "It has long been the rule that if instructions correctly state the law when read together as a whole, then there is no error." *Id.* at 721. Further, "[a]n instructional error will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Collins v. State*, 594 So. 2d 29, 35 (Miss. 1992) (citing *Laney v. State*, 486 So. 2d 1242, 1246 (Miss. 1986)). In the case *sub judice*, the trial court instructed the jury, in instruction four, as to the material elements of murder as follows:

If you find from all the evidence in this case beyond a reasonable doubt that:

1. Clyde Simmons was a living person on or about December 25, 1997,

and

2. The defendant BENNIE CLARK, without authority of law, did wilfully, feloniously, and of his deliberate design kill the said Clyde Simmons, by shooting him with a pistol,

then you shall find the defendant guilty of murder.

¶12. Instruction four is a correct recitation of the elements of murder provided in Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1999). The trial court further instructed the jury, in instruction two, that the State has the burden of proving Clark guilty of every material element of the crime beyond a reasonable doubt. These two instructions, as a whole, correctly stated the law of the case. Since there is no legal basis for instructing the jury that lack of proof of motive can give rise to reasonable doubt, and since the instructions as a whole correctly stated the law of the case, the trial court did not err in refusing Clark's requested instruction.

¶13. **THE JUDGMENT OF THE ATTALA COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED TO ATTALA COUNTY**.

**McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.**