# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-KA-01911-SCT

*CHRISTOPHER K. TAYLOR a/k/a*
*CHRISTOPHER TAYLOR a/k/a CHRIS TAYLOR*
*a/k/a CHAIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/15/2011 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/11/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., PIERCE AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Christopher Taylor was convicted in the Circuit Court of DeSoto County of one count

of burglary and one count of larceny. Aggrieved, Taylor appeals his conviction and

sentence, raising three issues:

   I. Whether the trial court erred by allowing the State's impeachment evidence.

   II. Whether the evidence was legally sufficient to support his convictions.

III. Whether the verdict was against the overwhelming weight of the evidence.

The Court finds no error and affirms Taylor's conviction and sentence.

## FACTS AND PROCEDURAL HISTORY

¶2. On the afternoon of January 24, 2011, Isaac and Anita Wallace's home in Hernando, Mississippi was burglarized. Anita reported the following items missing from her home: a flat-screen television, a laptop, her husband's jewelry, a jar of change, and a clear backpack which contained a pair of clippers and two flat irons. According to Anita, the items were worth more than $3,000.

¶3. Detective Semche Pieh of the Hernando Police Department investigated the case. According to Detective Pieh, the assailant broke a window and entered the home through the kitchen. Detective Pieh observed muddy footprints inside the home, and he noticed a trail of footprints which led from the kitchen window to another home behind the Wallaces' residence. The home belonged to the Thornton family.[1] Detective Pieh visited the home and informed Mr. Thornton of the burglary and the footprints leading to his home. Mr. Thornton denied having any knowledge of the burglary and suggested Detective Pieh return later to interview his grandson, Derrick Alexander, who was not home at the time.

¶4. Detective Pieh later interviewed Alexander. Alexander told the detective that his friend, Christopher Taylor, had visited his home the day of the burglary. The two were supposed to hang out, but Taylor left after Alexander took too long to get dressed. Detective Pieh testified that Alexander gave him conflicting times Taylor was at his home – once

---

[1]Mr. and Mrs. Thornton's first names are absent from the record.

2

saying Taylor was there between 12:00 p.m. and 12:30 p.m., and later saying Taylor was there between 2:00 p.m. and 4:00 p.m.

¶5. After speaking with Alexander, Detective Pieh attempted to locate Taylor, who lived with his grandparents. Taylor was out of town with his grandmother, but Detective Pieh was able to speak with Taylor's grandfather. Taylor's grandfather denied having any knowledge of the crime. The grandfather allowed Detective Pieh to search their home, and the detective specifically asked to see Taylor's shoes.[2] The grandfather told the detective that Taylor had taken a pair of shoes with him. Before leaving, Detective Pieh requested the grandfather tell Taylor to contact him upon his return.

¶6. On a tip,[3] Detective Pieh learned some of the stolen items – the clear backpack, two flat irons, and hair clippers – were at the home of Taylor's girlfriend, Kamesha Todd.[4] Detective Pieh visited Todd, and she allowed him to search her apartment. He recovered Anita's hair clippers.[5] As the State's witness, Todd testified that Taylor gave her a clear

---

[2]The detective had taken photographs of and sketched the footprints found outside the Wallaces' home. He used the photographs and sketches to compare to Alexander's and Taylor's shoes. Alexander's shoes did not match the footprints exactly, but they were similar. Taylor's shoes were not a match.

[3]The tipster's identity is not revealed in the record. Detective Pieh testified that Anita advised him to discuss the burglary with a local business owner. The business owner introduced the detective to an employee, who provided the information.

[4]Todd claimed she and Taylor were just friends at the time of the incident. The two now have a child together. However, testimony is inconsistent regarding whether the two were dating at the time of trial. Todd claimed that she and Taylor were engaged. But Taylor stated that they were on bad terms and not speaking. Taylor even insinuated that Todd had a grudge against him.

[5]Anita later identified the clippers as hers, which she recognized by a cord she recently had replaced.

3

backpack, which contained hair clippers and two flat irons.  Allegedly, Mrs. Thornton, Alexander's grandmother, warned Todd that the items were stolen.[6]  Upon learning this, Todd asked Taylor to remove the items from her home.[7]  According to Todd, Taylor said that Alexander had committed the burglary, and Taylor denied any participation in the burglary.  During her direct examination, Todd denied telling the detective that Taylor was present during the burglary.  She also denied saying that Taylor had thrown away a pair of shoes "he hit the lick in."[8]  The State impeached Todd with her statement.  Afterward, Todd admitted telling the detective that Taylor had thrown his shoes away, but she denied mentioning anything about the footprints found outside of the Wallaces' home.

¶7.    The State recalled Detective Pieh to impeach Todd's testimony.  According to the detective, Todd had said that Taylor admitted being at the Wallaces' home during the burglary.  But Todd said Taylor did not commit the burglary; she claimed Taylor was there only to help dispose of the stolen items.  The detective also learned from Todd that, after Taylor heard about the footprints, he disposed of his shoes.

¶8.    Detective Pieh was contacted by Sherry Dale, Taylor's mother.  She was concerned about her youngest son, Chad, who was approached by police regarding stolen items.  Dale

---

[6]According to Todd, Mrs. Thornton said her neighbor's home was burglarized, and the items came from Mrs. Thornton's home.

[7]When Detective Pieh visited Todd, the flat irons were no longer at her apartment.

[8]Previously, the Court has stated that "hit a lick" is colloquialism for robbery.  *Davis v. State*, 40 So. 3d 525, 527 (¶6) n.6 (Miss. 2010).  Today, the Court notes this phrase can be used in any instance where a person receives a substantial sum of money or goods, whether obtained legally or illegally.  For example, you can "hit a lick" at the casino by winning a large sum of money.  Thus, "hit a lick" does not always refer to criminal activity.

testified for the State. Dale stated that Chad had a laptop in his possession which she had not purchased. When Dale questioned Taylor about the laptop, he stated that he had received it from Todd. Dale then asked Taylor to remove the laptop from her home, and he did. Detective Pieh did not recover the laptop in his investigation.

¶9. Taylor also testified at trial. Taylor contacted Detective Pieh after returning to Hernando. Detective Pieh interviewed Taylor at the police station, and Taylor signed a waiver of his *Miranda* rights.[9] Detective Pieh informed Taylor that Alexander had implicated him in the burglary of the Wallaces' residence. Taylor was stunned and denied any knowledge of the burglary.

¶10. At trial, Taylor denied burglarizing the Wallaces' home and testified that Alexander actually had committed the burglary.[10] According to Taylor, he had received stolen property from Alexander – a clear backpack, two flat irons, hair clippers, and a laptop. Because the police had been to Alexander's home earlier that day, Taylor stated that Alexander had asked him to "hold" the items. To protect Alexander, who was his friend at the time, Taylor did not reveal Alexander's participation in the burglary during his interview with Detective Pieh. Taylor felt betrayed after learning that Alexander had implicated him in the crime. When

---

[9]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[10]Todd and Taylor testified regarding how and when Taylor visited Alexander's home the day of the burglary. According to Taylor, Todd dropped him off at his grandmother's home that morning. Taylor's grandmother lives near Alexander's home. Taylor said he spent the day "walking and chilling" in the neighborhood. Todd got off work around 4:00 p.m. After work, Todd picked Taylor up from a friend's house, they returned to Todd's apartment, and Taylor later borrowed Todd's car to visit Alexander. Taylor stated this was the only time he had visited Alexander that day. Todd testified to similar events. However, she stated that Taylor had borrowed her car to go to his grandmother's house. When he returned, he had a clear backpack which contained two flat irons.

asked where the stolen items were, Taylor testified that he had returned the laptop to Alexander and had thrown the other items in a dumpster.

¶11. On November 15, 2011, Taylor was convicted of one count of burglary and one count of larceny. On count one (burglary), he was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC), with three years to serve and twelve years of post-release supervision, with five years reporting. On count two (larceny), he was sentenced to ten years in the custody of the MDOC, with three years to serve and seven years of post-release supervision, with five years reporting. The trial court ordered those sentences to run concurrently. The trial court also ordered Taylor to pay a $1,000 fine, court costs, $100 to the Mississippi Crime Victim's Compensation Fund, and $2,650 in restitution.

¶12. Thereafter, Taylor filed a motion for a judgment notwithstanding the verdict (JNOV) and a motion for a new trial. The trial court denied both motions. Taylor timely filed his notice of appeal with this Court.

## ANALYSIS

### I. Impeachment Evidence

¶13. Taylor argues that the State was allowed to offer unsworn, out-of-court statements attributed to Todd through Detective Pieh's testimony, without proving that Todd was a hostile witness. Taylor contends that the statements were extremely damaging because they contained the only evidence connecting him to the scene of the crime. Taylor also complains that the trial court failed to offer a limiting instruction to the jury. The State argues that the prior inconsistent statement was used properly to impeach Todd. But the State's argument, which cites caselaw regarding the State's impeachment of a defense witness, is of no

6

assistance here.[11]

¶14.    In order to impeach its own witness with a prior inconsistent statement, a party must prove it was surprised by the witness's testimony or that the witness is hostile. ***Wilkins v. State***, 603 So. 2d 309, 322 (Miss. 1992). A prior inconsistent statement may be admitted for impeachment purposes only; it cannot be admitted as substantive evidence. ***Id***.

¶15.    Taylor does not challenge the State's impeachment of Todd; he challenges only the evidence elicited through Detective Pieh's testimony. As previously mentioned, Todd said Taylor denied committing the burglary and Todd denied saying that Taylor had thrown away his shoes. The State impeached Todd with a prior inconsistent statement given to Detective Pieh. After this, Todd admitted telling the detective Taylor had thrown his shoes away, but she denied mentioning the footprints found outside the Wallaces' home. The defense did not object to Todd's testimony and, on cross-examination, proceeded to question and elicit testimony from Todd regarding the statement.[12]

¶16.    After Todd's testimony, the State recalled Detective Pieh and questioned him regarding the substance of Todd's statement. The defense objected to Detective Pieh's testimony on the grounds of leading and "improper questioning concerning impeachment of the State's own witness." The trial court sustained as to leading but overruled the improper-

_____

[11]In its brief, the State cites a case relied upon by the trial court – ***Tate v. State***, 20 So. 3d 623, 635 (Miss. 2009). In ***Tate***, the Court held that the trial court did not err in allowing the prosecutor to *cross-examine* the defendant's wife regarding a prior inconsistent statement. ***Tate*** is distinguishable. Here, the State was allowed to impeach its own witness with a prior inconsistent statement without showing that it was surprised by Todd's testimony or that Todd was a hostile witness.

[12]The defense raised one objection to the form of a question, but the defense did not raise a substantive objection to the State's impeachment of Todd.

7

impeachment objection. Thereafter, the detective testified that Todd said: (1) Taylor had admitted being at the Wallaces' home during the burglary, (2) Taylor did not actually break into the home, but he was there to help Alexander dispose of the stolen items, and (3) Taylor had disposed of his shoes after learning police had found footprints outside the home.

¶17. The record clearly shows that the State was allowed to impeach Todd, its own witness, without proving (1) that it was surprised by her testimony, or (2) that she was a hostile witness. But Taylor failed to object to the State's impeachment of Todd at trial, which waives the argument for appellate review. *Bove v. State*, 185 Miss. 547, 188 So. 557, 558 (Miss. 1939). Taylor also has failed to raise a plain-error claim on appeal.[13] Alternatively, the Court, on its own volition, may recognize this as plain error.[14] The Court declines to do so and determines the issue has been waived for appellate review.

¶18. Defense counsel objected to Detective Pieh's testimony regarding Todd's statement, and the trial court overruled the objection. This was error. But, at that point, the damage had been done. Todd had admitted making the statements during her direct examination; the

---

[13]The Court has stated that:

A defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal. This Court applies the plain error rule only when a defendant's substantive rights are affected.

*Morgan v. State*, 793 So. 2d 615, 616 (¶6) (Miss. 2001).

[14]The Court of Appeals has reversed a case recognizing as plain error the State's failure to lay the proper foundation to impeach its own witness. *See King v. State*, 994 So. 2d 890 (Miss. Ct. App. 2008).

defense had failed to object to this testimony and to a request a limiting jury instruction.[15]

Thus, any error the trial court committed by overruling the objection to Detective Pieh's testimony regarding Todd's statement is harmless. This issue is without merit.

### II. Legal Sufficiency

¶19. Taylor challenges the legal sufficiency of the evidence. A motion for JNOV challenges the legal sufficiency of the evidence. *Knight v. State*, 72 So. 3d 1056, 1063 (¶24) (Miss. 2011). When ruling on a motion for JNOV, the trial court must view all credible evidence consistent with the defendant's guilt in the light most favorable to the State. *Id*. The Court will not disturb the trial court's ruling if "the evidence shows 'beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction[,]'" and reversal is required. *Id*. (quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005)). Thus, the Court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

### A. Burglary

¶20. Taylor was charged with two crimes – burglary and larceny. Regarding burglary, Mississippi Code Section 97-17-23(1) provides that:

> Every person who shall be convicted of breaking and entering the dwelling

---

[15]Failure to request a limiting instruction waives the issue on appeal. *Russell v. State*, 607 So. 2d 1107, 1117 (Miss. 1992).

house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished by commitment to the custody of the Department of Corrections for not less than three (3) years nor more than twenty-five (25) years.

Miss. Code Ann. § 97-17-23(1) (Rev. 2006). Taylor claims that he had received stolen goods from Alexander, and he did not burglarize the Wallaces' home. Taylor contends his possession of the stolen goods is insufficient evidence of burglary. Taylor states the impeachment evidence is the only evidence which places him at the scene of the crime and, since it was admitted improperly, it cannot be used as substantive evidence of his guilt.

¶21.    Taylor also claims this case is based on circumstantial evidence, and the evidence does not satisfy the circumstantial-evidence test. The Court finds that Taylor's conviction is based upon more than circumstantial evidence. However, we address Taylor's claim. Under the circumstantial-evidence test, the Court must consider the following:

> 1. The temporal proximity of the possession to the crime to be inferred;
>
> 2. The number or percentage of the fruits of the crime possessed;
>
> 3. The nature of the possession in terms of whether there is an attempt at concealment or any other evidence of guilty knowledge;
>
> 4. Whether an explanation is given and whether that explanation is plausible or demonstrably false.

*Shields v. State*, 702 So. 2d 380, 383 (Miss. 1997).

¶22.    Taylor claims the evidence is insufficient because he never concealed his possession of the items, and he provided an explanation for his possession. We disagree. Based on Todd's testimony, there is evidence that Taylor possessed fruits of the burglary the same day

it occurred. Taylor admitted possession of the laptop, hair clippers, and two flat irons. But based on Dale's testimony, Taylor concealed the true origin of the laptop given to her younger son. Although Taylor claims he is guilty only of receiving stolen property, Todd's testimony raises an inference of guilt as to burglary. It is within the jury's province to determine the credibility of the witnesses. *Knight*, 72 So. 3d at 1064 (¶32). Based on the evidence, a reasonable juror could have determined that Taylor burglarized the home.

¶23. Viewing the evidence in the light most favorable to the State, a rational juror could have found the State had proved the essential elements of burglary beyond a reasonable doubt.

### B. Larceny

¶24. Grand larceny is "taking and carrying away, feloniously, the personal property of another, of the value of Five Hundred Dollars ($500.00) or more. . . ." Miss. Code Ann. § 97-17-41(1) (Rev. 2006). Taylor argues that the State failed to prove he had stolen the items and, if anything, he is guilty of receiving stolen property. But, "[u]nder Mississippi law, possession of recently stolen property is a circumstance which may be considered by the jury and from which, in the absence of a reasonable explanation, the jury may infer guilt." *See Seales v. State*, 90 So. 3d 37, 42 (¶25) (Miss. 2012). As previously stated, there was sufficient evidence for the jury to determine that Taylor committed burglary beyond a reasonable doubt. This was a jury question, and the jury resolved any conflicts in the evidence in favor of Taylor's guilt. *See id* at 41-43 (¶¶20-30).

¶25. Taylor also argues that the State failed to prove the fair-market value of the items he had received. We disagree. Testimony established that Taylor had at least four of the stolen

11

items in his possession: the laptop, hair clippers, and two flat irons. Anita testified to the approximate cost of these items: the laptop cost $400, the hair clippers cost $60, and the two flat irons were $100 each. The value of the items equaled $660, more than the statute's $500 requirement. Thus, the Court finds that the State met this element of the offense.

¶26. Viewing the evidence in the light most favorable to the State, any rational trier of fact could have found that the State had proved the essential elements of larceny beyond a reasonable doubt. Accordingly, the Court finds the trial court did not err by denying Taylor's motion for JNOV.

### III. Weight of the Evidence

¶27. Taylor also argues that the verdict is against the overwhelming weight of the evidence. Specifically, Taylor maintains that the impeachment evidence is insufficient to support the guilty verdict.

¶28. A motion for a new trial challenges the weight of the evidence. *Knight*, 72 So. 3d at 1064 (¶31). The Court will not disturb the trial court's denial of a motion for a new trial unless "[the verdict] is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id*. (quoting *Bush*, 895 So. 2d at 844 (¶18)).

¶29. Taylor denied burglarizing the Wallaces' home, and Todd continually stated that Taylor had nothing to do with the burglary. But Todd's impeachment testimony called the credibility of both Taylor and Todd into question. Taylor failed to object to the State's impeachment of Todd and failed to request a limiting instruction. It is within the jury's province to determine the weight and credibility to give to the evidence, resolving all

conflicts in the evidence. ***Knight***, 72 So. 3d at 1064 (¶32). Viewing the evidence in the light most favorable to the verdict, the jury resolved any conflicts in the evidence in favor of Taylor's conviction. The Court finds that the verdict is not against the overwhelming weight of the evidence, and we cannot present any reason to call the jury's judgment into question. Accordingly, the trial court did not err by denying Taylor's motion for a new trial.

## CONCLUSION

¶30.    Taylor failed to object to the State's impeachment evidence during Todd's direct examination, and Taylor failed to request a limiting instruction. Thus, any error the trial court committed by overruling the objection to Detective Pieh's testimony regarding Todd's statement is harmless.

¶31.    Viewing the evidence in the light most favorable to the State, sufficient evidence exists upon which a jury could have found beyond a reasonable doubt that Taylor burglarized the Wallaces' home and committed larceny therein. Because the evidence was legally sufficient to support Taylor's conviction, the trial court did not err by denying Taylor's motion for a JNOV.

¶32.    The jury is charged with determining the weight and credibility to give to the evidence, resolving all conflicts in the evidence. Viewing the evidence in the light most favorable to the verdict, the jury resolved any conflicts in the evidence in favor of Taylor's conviction, and we find no reason to disturb the jury's verdict. Thus, the trial court did not err by denying Taylor's motion for a new trial.

¶33.    Based on the foregoing, the Court affirms Taylor's conviction and sentence.

¶34.    **COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND**

13

**SENTENCE OF FIFTEEN (15) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE (3) YEARS INCARCERATION, CREDIT FOR TWENTY-ONE (21) DAYS TIME SERVED, AND TWELVE (12) YEARS POST-RELEASE SUPERVISION WITH FIVE (5) YEARS REPORTING, AFFIRMED. COUNT II: CONVICTION OF GRAND LARCENY AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THREE (3) YEARS INCARCERATION, CREDIT FOR TWENTY-ONE (21) DAYS TIME SERVED, AND SEVEN (7) YEARS POST-RELEASE SUPERVISION WITH FIVE (5) YEARS REPORTING, AFFIRMED. APPELLANT SHALL PAY A FINE OF $1,000, COURT COSTS, $100 TO THE MISSISSIPPI CRIME VICTIM COMPENSATION FUND AND $2,650.00 IN RESTITUTION, WITH CONDITIONS. SENTENCES SHALL RUN CONCURRENTLY.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR.**

14