# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-00495-SCT

*RYAN ALLEN ABEYTA a/k/a RYAN A. ABEYTA*
*a/k/a RYAN ABEYTA*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/06/2013 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS, JR. |
| TRIAL COURT ATTORNEYS: | LISA D. COLLUMS, MICHAEL DYKES, SCOTT LUSK, CHRIS DANIEL |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MELANIE DOTSON THOMAS |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/01/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     A Harrison County jury convicted Ryan Abeyta of the murder of his mother, and the Circuit Court of Harrison County sentenced him to life in the custody of the Mississippi Department of Corrections. Abeyta appeals, arguing that he was entitled to a jury instruction on heat-of-passion manslaughter, that the evidence of deliberate design was insufficient to support the verdict, and that the trial court abused its discretion by admitting gruesome

photographs of the victim. We find that Abeyta's issues are without merit and affirm the judgment of the trial court.

**FACTS**

¶2. On October 10, 2010, Abeyta, age twenty-nine, was living with his mother, Pamela Santiago, in Gulfport, Mississippi. According to Pamela's best friend and neighbor, Sheila Ford, Abeyta was a heavy drug and alcohol user who routinely took Santiago's debit and credit cards to purchase drinks at a nearby bar. Ford testified that she visited Santiago on the morning of October 10. During the visit, Santiago noticed that her debit card was missing. Ford said that Santiago was upset because Abeyta's unauthorized use of the debit card had been a persistent problem. After Ford left, Abeyta returned home and had a conversation with his mother about the debit card. Then, he brutally beat her and strangled her to death.

¶3. A fitness walker discovered Santiago's body wrapped in a sheet in the woods near the Biloxi River. The forensic pathologist, Dr. Paul McGarry, conducted an autopsy of Santiago. He identified the cause of death as asphyxia from strangulation. He testified that he found evidence of blunt-force trauma to Santiago's face, neck, and upper chest. She had been struck five to six times in the face, and three to four times in the side and back of the head. Her neck, face, and eyes showed the classic signs of manual strangulation, and her chest bore bruises indicative of being pressed against a surface and strangled. Santiago had defensive wounds.

¶4. A video of Santiago at Walmart showed she was alive at 1:53 p.m. on October 10. Ford testified that, a little after 3:00 p.m. that day, Abeyta came over and he was sweaty and

2

crying. He hugged her, said "I'm sorry," and asked her for money. At about 6:30 p.m., Ford observed Abeyta and another man outside Abeyta's residence.

¶5.    The police searched Santiago's home. They found drops of dried blood in an office. In other rooms, they found white powder, syringes, marijuana residue, empty alcohol bottles, and sleeping pills. The police developed Abeyta as a suspect, and Detective Kelly Clark called him. He said that a mob from New Mexico had killed his mother and had threatened to kill him next if he did not return their money. He told Clark that he was in Louisiana and would drive back to Mississippi to meet the police. But Abeyta never turned himself in; by tracking his mother's cell phone, the police located him in Alabama, where he was arrested by a United States Marshal's task force. Abeyta was driving his mother's car.

¶6.    On October 12, 2011, Detective Jason Gouin interviewed Abeyta after securing his waiver of rights. Initially, Abeyta blamed his mother's death on a mob from New Mexico. Later, he admitted he had strangled her to death. He stated that he had been shooting cocaine. His mother was sitting behind her desk in her office, and he talked to her about the debit card. He said she was upset because he had taken the card and was drinking so much, and he "lost it" and choked her. Abeyta said that he sat with the body for awhile, then wrapped it in a sheet. He stated that he called a friend who agreed to help him dispose of the body. That evening, he and the friend put Santiago's body in her car, drove to the woods, and dumped the body.

¶7.    Abeyta's trial testimony varied from his statement to Gouin. Abeyta testified that, when he returned home on October 10, his mother asked him about the debit card, and he admitted that he had taken it. He testified that he went to his room and shot cocaine. Later,

3

he was in the living room drinking, and he had a "conversation with the devil" in which he contemplated killing Santiago. He went to his mother's office and apologized to her for taking the debit card. He testified that then, he blacked out, and when he came to he discovered that he had killed his mother. Abeyta testified that at first he was so distraught he tried to overdose on cocaine, but ultimately he decided to cover up the crime.

¶8.    The jury found Abeyta guilty of murder.

## DISCUSSION

### I. WHETHER THE TRIAL COURT ERRED BY DENYING A JURY INSTRUCTION ON HEAT-OF-PASSION MANSLAUGHTER.

¶9.    Abeyta argues that the trial court erroneously denied his requested jury instruction on the lesser-included offense of heat-of-passion manslaughter. *See* Miss. Code Ann. § 97-3-19 (3) (Rev. 2006) (providing that manslaughter is a lesser-included offense of murder). On review of the denial of a jury instruction, this Court "review[s] the jury instructions as a whole 'to determine if the jury was properly instructed.'" *Flowers v. State*, 51 So. 3d 911 (Miss. 2010) (quoting *Rubenstein v. State*, 941 So. 2d 735, 787 (Miss. 2006)). "A party has the right to have the jury instructed on all material issues presented by the evidence; generally, an instruction should be granted if it correctly states the law, is supported by the evidence, and is not repetitious." *Pauley v. State*, 113 So. 3d 557, 564 (Miss. 2013). A party is entitled to a jury instruction on a lesser-included offense if the instruction has an evidentiary foundation. *Batiste v. State*, 121 So. 3d 808, 844 (Miss. 2013). The trial court must grant a lesser-included-offense instruction unless the trial judge–and ultimately this Court–can say, considering the evidence and all reasonable inferences that can be drawn

4

therefrom in the light most favorable to the accused, that no reasonable jury could find the defendant guilty of the lesser-included offense. *Id.* (quoting *Anderson v. State*, 79 So. 3d 501, 505 (Miss. 2012)).

¶10.    Mississippi Code Section 97-3-35 provides that "[t]he killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss. Code Ann. § 97-3-35 (Rev. 2006). "Heat of passion" is

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Batiste*, 121 So. 3d at 844 (quoting *McCune v. State*, 989 So. 2d 310, 319 (Miss. 2008)). That the accused subjectively experienced passion and anger is not enough to reduce a killing to manslaughter. Rather, the impassioned reaction of the accused must have been reasonable: "the passion felt by the person committing the act should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation." *Agnew v. State*, 783 So. 2d 699, 703 (Miss. 2001). "[T]here must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment." *Id.* Additionally, "words alone and disagreements among people are not enough to invoke the passion required for this defense. 'Mere words, no matter how provocative, are insufficient to reduce an intentional and unjustifiable homicide from murder

5

to manslaughter.'" ***Phillips v. State***, 794 So. 2d 1034, 1037 (Miss. 2001) (quoting ***Gates v. State***, 484 So. 2d 1002 (Miss. 1986)).

¶11.   The trial court found that there was no evidentiary basis for Abeyta's proffered jury instruction on heat-of-passion manslaughter. Abeyta contends that his statement to Gouin, in which he admitted that, when he and his mother were discussing the debit card he "lost it" and choked her, established an evidentiary foundation for a heat-of-passion-manslaughter instruction. Abeyta points to Ford's testimony that she had advised Santiago to "cut off" Abeyta financially. Abeyta contends that it reasonably may be inferred from this testimony that Santiago did, indeed, threaten to cut him off, and that this threat constituted reasonable provocation. But the record does not support this inference; Abeyta never said that Santiago threatened to cut him off, and Ford testified that Santiago "coddled" Abeyta and that she had never witnessed Santiago provoke, insult, or injure him. Moreover, because mere words can never constitute reasonable provocation, a threat to cut off an adult child financially does not rise to the level of reasonable provocation sufficient to reduce murder to manslaughter.

¶12.   Additionally, "[d]enial of a manslaughter instruction is proper where the record is clear that the decedent was [killed] with malice or deliberate design." ***Batiste***, 121 So. 3d at 845 (quoting ***Simmons v. State***, 805 So. 2d 452, 474 (Miss. 2001)). The pathologist testified that Santiago had been struck five to six times in the face, and three to four times in the side and back of the head, and that she had been strangled for more than one minute before succumbing. Abeyta testified that he had contemplated killing Santiago, then followed through. The evidence was overwhelming that Abeyta killed his mother with deliberate design. We find that Abeyta was not entitled to a heat-of-passion-manslaughter instruction.

6

¶13. Abeyta also argues that his testimony that he expressed remorse immediately after killing Santiago was a sufficient basis for the proffered heat-of-passion-manslaughter instruction. He cites *Roberts v. State*, 458 So. 2d 719, 721 (Miss. 1984), where the defendant was convicted of murder for the shooting death of his wife. After the killing, the defendant was heard to say "I didn't mean to do it, baby, my baby," and the Court, in *dicta*, stated that this expression of remorse was enough to justify a manslaughter instruction. *Id.* Not only was the Court's statement *dicta*, but the Court did not consider whether the statement justified a heat-of-passion-manslaughter instruction rather than a manslaughter instruction on some other theory. We find that *Roberts* did not entitle Abeyta to a heat-of-passion-manslaughter instruction.

> II. WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE MURDER CONVICTION.

¶14. Abeyta filed a motion for judgment notwithstanding the verdict (JNOV), which was denied by the trial court. "A motion for JNOV challenges the legal sufficiency of the evidence." *Taylor v. State*, 110 So. 3d 776, 782 (Miss. 2013). In ruling on a motion for JNOV, the court considers the credible evidence in the light most favorable to the verdict. *Id.* After considering the evidence in the light most favorable to the verdict, if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," we will affirm. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 315, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). But if the facts and inferences, so considered, "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that

7

the defendant was guilty," we must reverse and render. *Id.* (quoting *Edwards v. State*, 469 So. 2d 68, 70 (Miss. 1985)).

¶15. Abeyta was found guilty of deliberate-design murder. Mississippi Code Section 97-3-19(1) provides that "the killing of a human being without the authority of law by any means or in any manner shall be murder . . . [w]hen done with deliberate design to effect the death of the person killed . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2006). Abeyta challenges the sufficiency of the evidence supporting the element of deliberate design. The element of deliberate design "connotes an intent to kill." *Wilson v. State*, 936 So. 2d 357, 364 (Miss. 2006). The term "deliberate" means "a full awareness of what one is doing and generally implies careful and unhurried consideration of the consequences." *Id.* The term "design" "means to calculate, plan or contemplate." *Id.* A person may form a deliberate design to kill quickly, even moments before the fatal act. *Id.*

¶16. Abeyta recognizes that his trial testimony, in which he admitted to contemplating killing Santiago, established a design to kill. But he argues the evidence was insufficient to prove that he acted deliberately; he contends that his drug abuse before the crime prevented his full awareness of his actions, as shown by testimony that he blacked out during the crime and that, after the crime, he was remorseful and attempted suicide.

¶17. We find that the evidence was sufficient to support the element of deliberate design. Abeyta admitted that he had killed Santiago. Dr. McGarry's testimony that Santiago had been beaten severely and then strangled for more than one minute was strong evidence that Abeyta had formed the deliberate design to kill. Abeyta testified that he had contemplated killing Santiago and then followed through while in a blackout induced by his voluntary ingestion

8

of illegal drugs. We have held that a defendant's voluntary intoxication is not a defense to murder. **Moore v. State**, 859 So. 2d 379, 385 (Miss. 2003) (citing **Greenlee v. State**, 725 So. 2d 816, 822-23 (Miss. 1988)). The rule is that "[i]f a defendant, when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts." **Greenlee**, 725 So. 2d at 823. Therefore, Abeyta's voluntary ingestion of drugs and alcohol did not negate the element of deliberate design. Considering all the evidence and reasonable inferences in the light most favorable to the verdict, a rational jury could have found Abeyta guilty of deliberate-design murder.

> ### III. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY ADMITTING GRUESOME PHOTOGRAPHS OF THE VICTIM.

¶18.    The State proffered seven photographs of Santiago's body taken before the autopsy, along with the testimony of Dr. McGarry that the photographs would aid him in describing Santiago's injuries to the jury. Abeyta objected to the photographs on the grounds that they were unduly inflammatory and prejudicial, and cumulative of Dr. McGarry's testimony. The trial court admitted a photograph of Santiago's bruised face, a close-up photograph of her hands showing defensive wounds, and another close-up photograph of her bruised neck and chest. The State wanted another facial photograph admitted to show the hemorrhaging of the eyes, and the trial court ordered that it be cropped to show just the eyes. The trial court excluded the three other photographs as cumulative of the ones admitted into evidence.

9

¶19.     Abeyta argues that the admission of the four photographs was an abuse of discretion. He renews his arguments that the photographs were cumulative of Dr. McGarry's testimony and inflammatory and prejudicial. The admissibility of photographs is a matter within the trial court's sound discretion. *Conners v. State*, 92 So. 3d 676, 686 (Miss. 2012). Photographs are admissible as long as they have an evidentiary purpose. *Barfield v. State*, 22 So. 3d 1175, 1181 (Miss. 2009). But photographs that are gruesome, lack an evidentiary purpose, and serve only to inflame the passions of the jury should not be admitted. *Id.* Photographs have evidentiary value when they "(1) aid in describing the circumstances of the killing; (2) describe the location of the body and cause of death; [and] (3) supplement or [clarify] witness testimony." *Id.* (quoting *McIntosh v. State*, 917 So. 2d 78, 83 (Miss. 2005)).

¶20.     The four photographs of Santiago's body each showed different injuries to different areas of the body. The facial photograph assisted Dr. McGarry in testifying about Santiago's bruising from blows to the face and head. Dr. McGarry testified that the photograph of the neck and chest showed bruising in a V-pattern, indicating that Abeyta was on top of Santiago when he strangled her. Dr. McGarry testified that another photograph showed a defensive wound to one of Santiago's fingers, and that the photograph of her eyes showed hemorrhaging, a classic sign of strangulation. The trial court was very careful in avoiding the admission of cumulative photographs, and all those admitted had evidentiary value because they supplemented and clarified Dr. McGarry's testimony and aided in describing the circumstances of the killing. Also, the photographs were highly probative of deliberate design, because they aided Dr. McGarry in describing the number of injuries and the length

of time it would have taken for Santiago to die. The trial court's admission of the photographs was not an abuse of discretion.

## CONCLUSION

¶21.   This Court holds that Abeyta was not entitled to a jury instruction on heat-of-passion manslaughter, the evidence was sufficient to support the verdict, and the trial court did not abuse its discretion by admitting gruesome photographs of the victim. We affirm the judgment of the Circuit Court of Harrison County.

¶22.   **CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. APPELLANT SHALL BE GIVEN CREDIT FOR ANY AND ALL TIME SERVED AS TO THIS CHARGE.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, KITCHENS, PIERCE, KING AND COLEMAN, JJ., CONCUR.**